501 So.2d 120 (1987)
Samuel C. WADHAMS, William Hadley, Robert G. Siff, Raymon J. Sweezy, Honor H. Sanborn, Maxine B. Holm, Robert G. McGregor, Kazimir Zielonka, Janet S. Wilson, Charles P. Leach, Sr., Walter R. Pierson, and Bess C. Knowles, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF SARASOTA COUNTY, Florida, Appellee.
No. 85-2957.
District Court of Appeal of Florida, Second District.
January 21, 1987.
*121 Daniel Joy, Sarasota, for appellants.
Richard E. Nelson and Richard L. Smith, of Nelson Hesse Cyril Smith Widman & Herb, Sarasota, for appellee.
SCHEB, Judge.
Plaintiffs challenge the trial court's final judgment refusing to invalidate the results of a referendum in which the voters adopted amendments to the county charter. We affirm.
Plaintiffs, residents of Sarasota County, sought a declaratory judgment to invalidate amendments adopted by a sizeable majority of the voters in the November 6, 1984, election. The amendments revised certain sections of the charter concerning meetings of the county's Charter Review Board.
The proposed charter amendments were initiated by the Board of County Commissioners after notice and public hearing. The notice published on August 22, 1984, announced a public hearing and stated that the proposed charter amendments would permit the Charter Review Board to meet only in 1988 and every four years thereafter. At the September 11, 1984, public hearing, which was attended by four of the plaintiffs, the Board adopted Ordinance # 84-72. That ordinance ordered a special election to be held on November 6, 1984, on the proposed amendments with the issue to be placed on the ballot in substantially the following form:

OFFICIAL BALLOT

SPECIAL ELECTION ON AMENDING ARTICLE II SECTIONS 2.11.A AND 2.11.B OF THE SARASOTA COUNTY CHARTER
NOVEMBER 6, 1984
Shall Article II, Sections 2.11.A and 2.11.B of the Sarasota County Charter be amended as proposed by Sarasota County Ordinance No. 84-72 to read:

"Section 2.11.A Composition, Election and Term of Members. There shall be a Charter Review Board which shall by 1984 be composed of ten (10) members who shall serve without compensation and who shall be elected in the following manner: five (5) members, one residing in each of the five County Commission *122 districts, shall be elected by the voters of Sarasota County at the general election to be held in 1982, and every (4) four years thereafter; five (5) members, one residing in each of the five County Commission districts, shall be elected by the voters of Sarasota County at the general election to be held in 1984, and every four (4) years thereafter. Members shall take office on the second Tuesday following the general election."

"Section 2.11.B Purpose, Jurisdiction and Meetings of Review Board. The Charter Review Board shall hold meetings to organize, elect officers, and conduct business only during the year, and prior to that time, in which a general election is held in 1988, and each four (4) years thereafter. The Review Board shall review the operation of the County government, on behalf of the citizens and recommend changes for improvement of this Charter. Such recommendations shall be subject to referendum in accordance with the provisions of Section 6 herein. An affirmative vote of two-thirds (2/3) of the members elected or appointed to the Review Board shall be required to recommend amendments for referendum. The Board of County Commissioners shall pay reasonable expenses of the Charter Review Board."
YES (Punch Card Number) NO (Punch Card Number)
The Board, on advice of its legal counsel, did not provide a summary of the proposed changes as required by section 101.161(1), Florida Statutes (Supp. 1984), which states:
(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word "yes" and also by the word "no," and shall be styled in such a manner that a "yes" vote will indicate approval of the proposal and a "no" vote will indicate rejection. The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, or enabling resolution or ordinance. The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
The Board's counsel opined that the quoted section was merely a directory requirement.
On January 9, 1985, approximately two months after the election, the plaintiffs, six of whom are elected members of the Charter Review Board brought this suit. In their amended complaint, they charged that the Board's failure to include an explanatory statement not exceeding 75 words stating the purpose or substance of the proposal violated the requirements of section 101.161(1). Further, they contended the ballot was misleading to the voters. The voters, they argued, could reasonably have concluded they were merely voting to continue the Charter Review Board, rather than prohibiting it from meeting except during every fourth year. The Board denied the substantive allegations and affirmatively asserted defenses of the statute of limitations, waiver, estoppel and laches.
Following a nonjury trial at which testimony and exhibits were presented, the court allowed counsel to submit written arguments and legal memoranda. The court focused on the following issues: (1) whether section 101.161(1) is directory or mandatory; (2) whether the plaintiffs were precluded from the relief they seek because of their delay in formally seeking a remedy; and (3) whether the ballot gave fair notice to the voters of the decision they were called on to make. The court observed in its final judgment that the issues before it required it to make both legal and factual determinations.
*123 The trial court concluded that section 101.161(1) is mandatory and was not substantially complied with by the Board. Nevertheless, the court made a factual finding that the plaintiffs had sufficient advance notice of the proposed ballot to have enabled them to have brought an appropriate action before the election. Their failure to have done so, the court found, precluded consideration of their complaint as to the wording of the issue on the ballot. Further, the court concluded that the voters were afforded ample opportunity to become informed on the issue before the election and that the ballot gave the voters fair notice of the decision they were called on to make.
The court determined that the ballot was not misleading, observing that out of some 90,000 votes cast, the amendment was approved by 70% of the voters. Finding that the plaintiffs had failed to carry their burden of establishing that a substantial number of voters were misled by the language on the ballot, the court concluded the charter amendments were properly adopted by the voters of Sarasota County.
The unsuccessful plaintiffs contend the trial court erred in upholding the election results after finding that the ballot did not comply with the requirement of section 101.161(1).
We think the trial court correctly articulated the issues and properly applied the law to those issues and that the court's factual findings are supported by substantial, competent evidence. The basic constitutional requirement applicable here is that an election ballot furnish the voters notice of what they are to decide so they may intelligently cast their ballot. Hill v. Milander, 72 So.2d 796 (Fla. 1954). The primary consideration in an election is whether the will of the people has been effected. Boardman v. Esteva, 323 So.2d 259, 269 (Fla. 1975), cert. denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976). Where, as here, no fraud is charged and no one claimed to have been denied the right to vote or prevented from exercising that privilege, the issue is whether there has been substantial compliance with the applicable statutory requirements. State v. Sarasota County, 155 So.2d 543 (Fla. 1963).
We note that here there was evidence that one of the plaintiffs, Mr. Wadhams, was aware of the problem of the ballot wording before the election. Yet, he and the other plaintiffs waited some two months after the election before filing suit to invalidate the election results. The exhibits before the court revealed that as early as August 22, 1984, a notice was published calling for a public hearing on the issue for September 11, 1984, and that the proposed charter amendment was printed in the local newspaper on October 1 and 15, 1984. While plaintiff Wadhams testified he was only aware of the ballot problem a week before the day of election, he acknowledged being present at a September 11, 1984, public hearing on the issue. Moreover, five of the six plaintiffs, including Wadhams, who were members of the Charter Review Board met September 27, 1984, and discussed Ordinance 84-72. Regarding that discussion, Wadhams testified: "I think there was a little more discussion on the 27th but not  not  keep in mind the election wasn't over yet, you know. It makes a difference if you know what your situation is."
We have not overlooked the fact that two voters testified they found the ballot confusing and that an attorney and a linguist shared that view. Still the purpose of the amendment was shown to have been widely disseminated by public hearing, advance publication, and media publicity. See Askew v. Firestone, 421 So.2d 151, 153 (Fla. 1982). The fact that a ballot may be confusing to some does not mandate a court to invalidate the results of an otherwise properly conducted election. See Nelson v. Robinson, 301 So.2d 508 (Fla. 2d DCA), cert. denied, 303 So.2d 21 (Fla. 1974). From our review of the record, we cannot say the trial court erred in either its findings or legal conclusions.
Affirmed.
*124 HALL, J., concurs.
GRIMES, A.C.J., dissents with opinion.
GRIMES, Acting Chief Judge, dissents with opinion.
The majority framed the issue as "whether there has been substantial compliance with the applicable statutory requirements." The trial court held that there was no substantial compliance and the majority has never stated otherwise. Section 101.161, Florida Statutes (Supp. 1984), required the ballot to contain "an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." The ballot contained no explanatory statement whatsoever.
In Askew v. Firestone, 421 So.2d 151 (Fla. 1982), the supreme court considered the validity of the explanatory statement which was to be on the ballot in connection with a constitutional amendment concerning the restrictions on lobbying by former legislators and statewide elected officers. The explanatory statement accurately summarized the wording of the amendment by stating that it would prohibit former legislators and statewide elected officers from lobbying before any state government body for a period of two years unless they filed full and public disclosure of their financial interests. However the existing constitutional provision contained an absolute two year ban on lobbying by such persons, so the actual effect of the amendment was to relax the ban for those who made financial disclosure. The supreme court struck the amendment from the ballot because the explanatory statement required by section 101.161 did not inform the public of the true purpose of the amendment. The court noted that had the proposal been a totally new provision rather than an amendment to an existing one, the ballot summary would have sufficed.
The same thing occurred in the instant case. Since the ballot only contained the actual language of the amendment itself the public was not apprised that the real purpose of the amendment was to prohibit the already existing charter review board from meeting except during every fourth year. By simply reading the amendment, one could readily conclude that its intent was to establish the charter review board in the first place. There was nothing on the ballot to inform the voter of the change to be accomplished by the amendment, which is the very reason why section 101.161(1) requires an explanatory statement.
While the plaintiffs were aware of the amendment several weeks before the election and knew what it was designed to accomplish, they did not know that the ballot contained no explanatory summary until a week before the election took place. The question is not whether the plaintiffs knew of the purpose of the amendment but whether the voters of Sarasota County were apprised of its purpose through an explanatory statement. Certainly there would become a point where laches would preclude an attack on the ordinance, but this suit was filed only a few weeks after the election.
The majority seems to be saying that even though there was no explanatory statement, it doesn't make any difference because the amendment received substantial publicity and passed by a comfortable margin. To apply this rationale thwarts the whole intent of section 101.161(1). How can it be said with reasonable certainty that the voters would have reacted the same way if the ballot had contained an explanation of the purpose of the amendment? Since there was no substantial compliance with the statute, the ordinance should have been stricken.
I respectfully dissent.