567 So.2d 414 (1990)
Samuel C. WADHAMS, et al., Petitioners,
v.
BOARD OF COUNTY COMMISSIONERS OF SARASOTA COUNTY, Florida, Respondent.
No. 70078.
Supreme Court of Florida.
August 30, 1990.
*415 Daniel Joy, Sarasota, for petitioners.
Richard E. Nelson and Richard L. Smith of Nelson, Hesse, Cyril, Smith, Widman & Herb, Sarasota, for respondent.
EHRLICH, Justice.
We have for review Wadhams v. Board of County Commissioners, 501 So.2d 120 (Fla. 2d DCA 1987), due to express and direct conflict with Askew v. Firestone, 421 So.2d 151 (Fla. 1982). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The Board of County Commissioners of Sarasota County (Board) proposed amendments to the county charter concerning meetings of the county's Charter Review Board. A special election was held on the proposed amendments on November 6, 1984. The ballot appeared as follows:
OFFICIAL BALLOT
SPECIAL ELECTION ON AMENDING ARTICLE II
SECTIONS 2.11.A AND 2.11.B OF THE SARASOTA COUNTY CHARTER
NOVEMBER 6, 1984
Shall Article II, Sections 2.11.A and 2.11.B of the Sarasota County Charter be amended as proposed by Sarasota County Ordinance No. 84-72 to read:
"Section 2.11.A Composition, Election and Term of Members. There shall be a Charter Review Board which shall by 1984 be composed of ten (10) members who shall serve without compensation and who shall be elected in the following manner: five (5) members, one residing in each of the five County Commission districts, shall be elected by the voters of Sarasota County at the general election to be held in 1982, and every (4) four years thereafter; five (5) members, one residing in each of the five County Commission districts, shall be elected by the voters of Sarasota County at the general election to be held in 1984, and every four (4) years thereafter. Members shall take office on the second Tuesday following the general election."
"Section 2.11.B Purpose, Jurisdiction and Meetings of Review Board. The Charter Review Board shall hold meetings to organize, elect officers, and conduct business only during the year, and prior to that time, in which a general election is held in 1988, and each four (4) years thereafter. The Review Board shall review the operation of the County government, on behalf of the citizens and recommend changes for improvement of this Charter. Such recommendations shall be subject to referendum in accordance with the provisions of Section 6 herein. An affirmative vote of two-thirds (2/3) of the members elected or appointed to the Review Board shall be required to recommend amendments for referendum. The Board of County Commissioners shall pay reasonable expenses of the Charter Review Board."
YES (Punch Card Number) NO (Punch Card Number)
The proposal received an affirmative vote from a majority of the voters.
Subsequent to the election, petitioners filed a complaint challenging the amendment to section 2.11 of the county charter, alleging that the referendum placed on the special election ballot by the Board failed to comply with the essential requirements of the general law of Florida. Specifically, petitioners challenged the fact that the Board, based upon the advice of its legal counsel, did not provide a summary of the proposed changes as required by section 101.161(1), Florida Statutes (Supp. 1984). The trial court concluded that the section was mandatory and was not substantially complied with by the Board. The trial court refused, however, to invalidate the results of the referendum. The Second District Court of Appeal affirmed, stating that "the purpose of the amendment was shown to have been widely disseminated by public hearing, advance publication, and media publicity," and "[t]he fact that a ballot may be confusing to some does not mandate a court to invalidate the results of an otherwise properly conducted election." 501 So.2d at 123 (citations omitted).
*416 Section 101.161(1) provides, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot... . The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.
(Emphasis added.) Petitioners argue that the lower courts erred in upholding the election result despite finding that the Board had failed to comply with the requirements of section 101.161(1). We agree. The above provisions of section 101.161(1) are mandatory. As this Court stated in Askew: "The purpose of section 101.161 is to assure that the electorate is advised of the true meaning, and ramifications, of an amendment." 421 So.2d at 156. "[S]ection 101.161 requires that the ballot title and summary for a proposed constitutional amendment [or other public measure] state in clear and unambiguous language the chief purpose of the measure." Id. at 154-55 (emphasis added).
In Askew, the plaintiffs appealed a trial court order validating the caption and summary of a proposed constitutional amendment scheduled to appear on the November 1982 general election ballot. The proposed amendment at issue was to remove the absolute two-year ban on lobbying by former legislators and elected officers before their former governmental bodies or agencies, as set forth in the "Sunshine Amendment" to article II of the Florida Constitution. Under the proposed amendment, the two-year ban would apply only if an affected person failed to make financial disclosure. The proposed summary of the amendment for the ballot stated that the amendment "`[p]rohibits former legislators and statewide elected officers from representing other persons or entities for compensation before any state government body for a period of 2 years following vacation of office, unless they file full and public disclosure of their financial interests.'" Id. at 153. This Court held that the joint resolution proposing the amendment was invalid and must be stricken from the ballot because the summary was "misleading to the public concerning material changes to an existing constitutional provision." Id. at 156. The problem with the summary was that it failed to inform the public that there was presently a total ban on lobbying before one's agency for two years, regardless of financial disclosure. Stated alternatively, the summary did not adequately reflect the chief purpose of the joint resolution, which was to remove the two-year absolute ban on certain lobbying activities.
The problem with the ballot in the present case is much the same as the problem with the ballot in Askew. By containing the entire section as it would actually appear subsequent to amendment, rather than a summary of the amendment to the section, the ballot arguably informed the voters that the Charter Review Board would only be permitted to meet once every four years. By failing to contain an explanatory statement of the amendment, however, the ballot failed to inform the public that there was presently no restriction on meetings and that the chief purpose of the amendment was to curtail the Charter Review Board's right to meet. Similar to the ballot summary at issue in Askew, the present ballot "is deceptive, because although it contains an absolutely true statement, it omits to state a material fact necessary in order to make the statement made not misleading." Askew, 421 So.2d at 158 (Ehrlich, J., concurring). The only way a voter would know what changes were being effected by an affirmative vote on the ballot would be to know what section 2.11 of the county charter provided prior to amendment. As then Judge Grimes noted in his dissent below: "[T]here was nothing on the ballot to inform the voter of the change to be accomplished by the amendment, which is the very reason why section 101.161(1) requires an explanatory statement." 501 So.2d at 124 (Grimes, J., dissenting). See also Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA) *417 (placement on ballot of proposition to provide that the board of county commissioners shall be the governing board of the fire and rescue service district, but making no mention of the elimination of the existing governing body of the Fire and Rescue District, was misleading to voters and violated section 101.161(1), especially in light of simultaneously conducted election of persons to the existing governing board), review denied, 523 So.2d 577 (Fla. 1988). Cf. Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981, 987 (Fla. 1981) (ballot was not misleading and gave voters fair notice of the decision to be made where it "contained a brief description of the tax plan, i.e., the rate, the group on whom it would be imposed, the expected revenues, and the planned expenditure of those revenues").
The Board argues that the majority in the decision below correctly concluded that there was no reason to invalidate the amendments based on voter confusion because the voters were afforded ample opportunity to become informed on the issue before the election by public hearings, advance publication of the proposal, and media publicity. We reject this argument. As this Court stated in Askew, "[t]he burden of informing the public should not fall only on the press and opponents of the measure  the ballot ... summary must do this." 421 So.2d at 156 (emphasis added). See also Evans v. Firestone, 457 So.2d 1351, 1355 (Fla. 1984) ("[T]he voter must be told clearly and unambiguously ... what the amendment does... . The ballot summary should tell the voter the legal effect of the amendment... .").[1]
We also reject the Board's argument that the favorable vote cured any defects in the form of the submission. This defect was more than form; it went to the very heart of what section 101.161(1) seeks to preclude. Moreover, it is untenable to state that the defect was cured because a majority of the voters voted in the affirmative on a proposed amendment when the defect is that the ballot did not adequately inform the electorate of the purpose and effect of the measure upon which they were casting their votes. No one can say with any certainty what the vote of the electorate would have been if the voting public had been given the whole truth, as mandated by the statute, and had been told "the chief purpose of the measure." As this Court has previously stated: "[T]he voter should not be misled and ... [should] have an opportunity to know and be on notice as to the proposition on which he is to cast his vote... . What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954) (emphasis added).
Finally, we reject the Board's argument that the present case is distinguishable from Askew because Askew dealt with a preelection challenge to the ballot and that the petitioners should be foreclosed from relief because the present action was not instituted until after the special election. The Board in effect argues that hoodwinking the voting public is permissible unless the action is challenged prior to the election. We perceive no basis for the Board's conclusion that the holding of this Court in Askew applies only if the challenge is made prior to the election. We agree with the dissent below that although there would come a point where laches would preclude an attack on the ordinance, such is not the situation in the present case where the suit was filed only a few weeks after the election. 501 So.2d at 124.[2]
*418 Deception of the voting public is intolerable and should not be countenanced. The purpose of section 101.161(1) is to assure that the electorate is advised of the meaning and ramifications of the proposed amendment. Because the ballot at issue failed to comply with the mandate of the legislature expressed in section 101.161(1), the proposed amendments must be stricken.[3] Accordingly, the decision of the district court below is quashed.
It is so ordered.
SHAW, C.J., and McDONALD and BARKETT, JJ., concur.
KOGAN, J., dissenting with an opinion, in which OVERTON, J., concurs.
GRIMES, J., recused.
KOGAN, Justice, dissenting.
I respectfully dissent.
I disagree with the majority's contention that the election results should be invalidated because the ballot did not comply with section 101.161, Florida Statutes (Supp. 1984). I recognize that in our opinion in Askew v. Firestone, 421 So.2d 151 (Fla. 1982), we held that section 101.161 is mandatory. In Askew, we considered a preelection challenge to the validity of an explanatory statement which was to appear on the ballot summarizing a constitutional amendment concerning restrictions on lobbying by former legislators and statewide elected officers. The amendment was struck from the ballot because the Court determined the explanatory statement did not adequately inform the public of the true purpose of the amendment as required by section 101.161. Here we are presented with a postelection challenge to the validity of an amendment appearing on the ballot which contained no explanatory statement. While we have declared the ballot requirements of section 101.161 to be mandatory, this is not to say that the absence of strict compliance with the statute constitutes a fatal defect necessitating invalidation of the results of an otherwise properly conducted election, particularly under the circumstances of this case.
The purpose of section 101.161 is to assure that the electorate is advised of the meaning and ramifications of the amendment. Grose v. Firestone, 422 So.2d 303 (Fla. 1982). I believe the ballot in question carried out the intent of the statute. First, while the ballot contained no summary stating the purpose of the amendment, the actual language of the amendment appeared on the ballot. Moreover, the provisions of the amendment were clearly stated. Additionally, the record reflects that the public was made aware of the purpose of the amendment by public hearing, advance publication of the proposal and media publicity. Thus, I agree with the trial court's conclusion "that the voters were afforded ample opportunity to become informed on the issue before the election and *419 that the ballot gave the voters fair notice of the decision they were called on to make." Wadhams v. Board of County Comm'rs, 501 So.2d 120, 123 (Fla. 2d DCA 1987). The ballot complied with the essential requirements of law "that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954). Therefore, I can see no reason to invalidate the amendments to the county charter after a valid election was held on the ground that the voters were misled by the ballot language.
Had the petitioners brought the appropriate action challenging the language on the ballot before the election, the Board, under the dictates of Askew, would have been required to submit the amendment to the voters in summary form. However, once an election has been held and the results proclaimed it is the duty of the courts to uphold those results provided the election has "been free and fair, and it is clear that the voters have not been deprived of their right to vote, and the result has not been changed by irregularity." Winterfield v. Town of Palm Beach, 455 So.2d 359, 361 (Fla. 1984) (quoting State ex rel. Smith v. Burbridge, 24 Fla. 112, 130, 3 So. 869, 877 (1888)). When it becomes apparent to an individual that a ballot is deficient under section 101.161 because it contains no explanatory statement, the burden is on him or her to institute a timely challenge. The district court noted that evidence was presented that one of the petitioners, Mr. Wadhams, was aware before the election that there was no summary. He was present at the September 11, 1984 public hearing when ordinance 84-72, which included an official sample ballot of the proposed amendment, was adopted. The amendment was also printed in full in the local newspaper on October 1 and 15. Furthermore, the record discloses that five of the petitioners, including Mr. Wadhams, were members of the Charter Review Board that met on September 27, 1984 and discussed ordinance 84-72. Mr. Wadhams testified that the general opinion of the members was that the amendment would not be approved, and it appears no action was taken prior to the election because of this belief.
This Court has previously held that defects in the form of the ballot are not fatal if an amendment which was duly proposed was actually published and submitted to a vote of the people and adopted by them without any question raised prior to the election. Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892 (1944). The effect of the favorable vote is to cure any defects in the form of the submission. Id. "The aggrieved party cannot await the outcome of the election and then assail preceding deficiencies which he might have complained of to the proper authorities before the election." Pearson v. Taylor, 159 Fla. 775, 776, 32 So.2d 826, 827 (1947). Moreover,
[r]epublics regard the elective franchise as sacred, and the courts should not set aside an election because some official has not complied with the law governing elections, where the voter has done all in his power to cast his ballot honestly and intelligently, unless fraud has been perpetrated or corruption or coercion practiced to a degree to have affected the result.
Carn v. Moore, 74 Fla. 77, 88-89, 76 So. 337, 340 (1917). Thus, once a party has been put on notice that a ballot is deficient under the requirements of section 101.161, the defect must be challenged before the election has taken place and the outcome of the vote has been determined. I believe the record supports the trial court's conclusion that the petitioners had sufficient advance notice of the proposed ballot to have challenged the form of the ballot before the election. Furthermore, nothing in the record indicates that this was anything but a properly conducted election. As the district court observed, no fraud was charged and no one was denied the right to vote or was prevented from voting. Accordingly, I would approve the decision of the second district.
OVERTON, J., concurs.
NOTES
[1] Rowe v. Pinellas Sports Authority, 461 So.2d 72 (Fla. 1984), relied upon by the Board as support for this argument, is not applicable. In Rowe, the ballot summary adequately gave the voters fair notice of the question to be decided. The statement in Rowe that "[b]efore this election, the full text of the ordinance had been advertised and debated at a public hearing called to consider it," 461 So.2d at 77, was made in the context of explaining why Florida law does not require that every substantive provision of a proposed ordinance be reflected on a referendum ballot.
[2] The fact that some of the petitioners in the present case may have been aware of the form of the ballot or the chief purpose of the proposed amendment prior to the election does not change our conclusion. The Board fails to explain why the fact that some of the petitioners may have been aware precludes the present action by all of the petitioners. As noted in the dissent below, "[t]he question is not whether the plaintiffs knew of the purpose of the amendment but whether the voters of Sarasota County were apprised of its purpose through an explanatory statement." Wadhams v. Board of County Commissioners, 501 So.2d 120, 124 (Fla. 2d DCA 1987).
[3] Subsequent to oral argument before this Court, article II, section 2.11.B of the Sarasota County Charter was again amended in the November 8, 1988 election. A majority of the voters affirmatively approved the following referendum which appeared on the ballot:

Shall Article II, section 2.11.B, of the Sarasota County Charter be amended to provide the following:
"To allow the Charter Review Board to hold meetings, conduct business, and review the operation of County Government during every other calendar year, beginning in 1988, rather than once every four years. In odd-numbered years the Board shall be in recess. The Board will be allowed to call a meeting during odd-numbered years by unanimous concurrence of all members then elected or appointed."
In effect, the voters of Sarasota County have readopted, but modified the results of the invalid 1984 election. Our conclusion that the 1984 amendment was a nullity because the ballot failed to comply with section 101.161(1), Florida Statutes (Supp. 1984), does not lead to the conclusion that the 1988 amendment is also invalid. The 1988 amendment is not an issue in the case at bar.