ZEHMER, Chief Judge.
Appellants filed this suit to have declared invalid an amendment to the Jacksonville City Charter that was subsequently approved by referendum in the 1994 general election. They have appealed a final order that denied their motion for summary judgment and sua sponte entered summary final judgment in favor of appellees. We agree with appellants that as a matter of law the ballot measure submitted to the voters failed to comply with the mandatory ballot summary requirements in section 101.161(1), Florida Statutes (1993). Therefore, we reverse and remand with directions to enter summary judgment for appellants.
In 1992, an organization known as Taxpayers for Reform in Municipal Management (TRIMM) commenced a petition drive for the purpose of submitting by referendum to the electors a charter amendment providing for the establishment of an appointed civil service board in the City of Jacksonville. At the time the initiative began, the city charter provided in section 17.02 for civil service board members to be “elected by the qualified electors of the consolidated government” in each member’s district. In June 1994, TRIMM submitted approximately 25,000 signed petitions to appellee Bell, as supervisor of elections, for certification that the proposed amendment be submitted to the voters by referendum. In her letter dated June 14, 1994, Bell certified the petitions as being in compliance with relevant provisions of the city charter, and notified the president of the city council that the proposed charter amendment could be submitted for referendum at the time of the November 1994 general election.
The proposed amendment was included on the general election ballot. The ballot set forth the full text of the proposed amendment, prefaced by the question “[sjhall the *164 Charter of the City of Jacksonville be amended to amend and substitute Section 19.02 to Article 19 of the Charter,[1] to provide as follows,” and followed by a place for voters to signify their vote “yes” or “no.” The ballot presentation did not include a summary setting forth an explanatory statement of the chief purpose of the proposal.
On October 12, 1994, appellants, as residents, voters and municipal employees of the City of Jacksonville, filed a complaint for injunctive and declaratory relief, alleging the invalidity of the TRIMM-initiated referendum item based on, among other things, the fact that both the petitions and the proposed ballot failed to include a ballot summary as required by section 101.161(1). The court denied appellants’ motion for a preliminary injunction to prevent the measure from being submitted to the electorate at the November general election, and the proposed measure won voter approval at the November 8, 1994, election. Appellants then moved for summary judgment, specifically averring that the amendment as approved by the voters was invalid and of no legal effect because the ballot did not contain the ballot summary required by section 101.161(1), Florida Statutes, and section 18.05(j) of the city charter, and failed to adequately inform the voters that “approval would result in the abolition of the existing elected Civil Service Board.” The trial court denied appellants’ motion and, on the court’s own motion, entered summary final judgment in favor of appellees. The court’s order recited that “plaintiffs declared and the Court concurs that there is no genuine issue of any material fact” and that summary judgment is proper; that TRIMM gathered and submitted a sufficient number of competent petitions; that “[t]he Charter provisions in effect at the commencement of Defendant’s petition gathering set forth the applicable standards”; that the proposed amendment on the ballot was the same as that on the petitions and was printed in its entirety; and that “[t]he title and text of the question as set forth on the ballot are clear and straightforward, and sufficiently appraised. [sic] the voters of Duval county of the substance of the proposed amendment to the Charter.” This appeal ensued, and in view of the approaching qualifying date for the elective board positions later this month, consideration and disposition by this court has been expedited.
The record contains a copy of the Jacksonville City Charter certified by the Council Secretary to be a true and correct copy as codified through June 2, 1994. Only two provisions in that charter explicitly deal with the process of amending the charter. The first provision appears in section 3.01, and states that the “consolidated government” may amend or repeal any provision of the charter by ordinance, provided that changes in the terms of the elected officers, matters relating to appointive boards or change in the form of government “cannot become effective without approval by referendum of the electors as provided in section 166.031, Florida Statutes.”[2] The other provision is found in section 18.05 of the charter, which provides for a referendum to be proposed either by ordinance or “by a petition signed by qualified voters of Duval County equal in number to at least five (5) percent of the total number of registered voters in the city ...,” and sets forth detailed requirements for initiating a referendum by petition. Sub-paragraph (i) of that section requires that notice of such referendum be published in a local newspaper and that when charter *165 amendments are proposed the notice shall set forth “the exact language of the proposed charter amendment as it will appear- on the ballot.” Subparagraph (j) of that section further provides in part that:
The ballot for the referendum shall be prepared so as to set forth the exact language of each proposed charter amendment. In addition, the ballot shall also comply with ballot summary requirements in Florida Statutes.
It is readily apparent from these charter provisions that as of June 2, 1994, which was prior to the date on which TRIMM’s petitions for referendum were certified by the Supervisor of Elections for inclusion on the general election ballot, the Jacksonville City Charter explicitly contemplated that any amendment to the charter placed on a referendum ballot should be accompanied by a ballot summary as required by Florida Statutes.
Section 101.161(1), Florida Statutes (1993), requires that whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of that measure shall be printed in clear and unambiguous language on the ballot. The statute further provides that the required “substance” shall consist of an explanatory statement, not exceeding 75 words in length, setting forth the chief purpose of the measure. As construed by the supreme court, section 101.161(1) embodies the notion that a ballot must give the voter fair notice of the decision to be made in the sense that “fair notice in terms of a ballot summary must be actual notice consisting of a clear and unambiguous explanation of the measure’s chief purpose.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982); see also, Evans v. Firestone, 457 So.2d 1351 (Fla.1984). The ballot summary requirement in section 101.161(1) is mandatory. Wadhams v. Board of County Commissioners, 567 So.2d 414 (Fla.1990).
The factual circumstances in Wadhams bear a striking similarity to the case at bar. There, the supreme court considered a charter amendment that appeared in full on the ballot without an explanatory summary, and after voter approval the court invalidated the election results for failure to comply with section 101.161(1). In so ruling, the court noted that a ballot summary is necessary to clearly inform the electorate of the purpose and effect of the measure upon which they cast their votes, explaining:
The problem with the ballot in the present case is much the same as the problem with the ballot in Askew. By containing the entire section as it would actually appear subsequent to amendment, rather than a summary of the amendment to the section, the ballot arguably informed the voters that the Charter Review Board would only be permitted to meet once every four years. By failing to contain an explanatory statement of the amendment, however, the ballot failed to inform the public that there was presently no restriction on meetings and that the chief purpose of the amendment was to curtail the Charter Review Board’s right to meet. Similar to the ballot summary at issue in Askew, the present ballot “is deceptive, because although it contains an absolutely true statement, it omits to state a material fact necessary in order to make the statement made not misleading.” Askew, 421 So.2d at 158 (Ehrlich, J., concurring). The only way a voter would know what changes were being effected by an affirmative vote on the ballot would be to know what section 2.11 of the county charter provided prior to amendment. As then Judge Grimes noted in his dissent below: “[T]here was nothing on the ballot to inform the voter of the change to be accomplished by the amendment, which is the very reason why section 101.161(1) requires an explanatory statement.” 501 So.2d [120] at 124 [Fla.2d DCA 1987] (Grimes, J., dissenting). See also Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA) (placement on ballot of proposition to provide that the board of county commissioners shall be the governing board of the fire and rescue service district, but making no mention of the elimination of the existing governing body of the Fire and Rescue District, was misleading to voters and violated section 101.161(1), especially in light of simultaneously conducted election of *166 persons to the existing governing board), review denied, 523 So.2d 577 (Fla.1988).
567 So.2d at 416-17. Holding that the absence of such a summary statement rendered the proposed charter amendment fatally defective, the court stated:
Deception of the voting public is intolerable and should not be countenanced. The purpose of section 101.161(1) is to assure that the electorate is advised of the meaning and ramifications of the proposed amendment. Because the ballot at issue failed to comply with the mandate of the legislature expressed in section 101.161(1), the proposed amendments must be stricken.
567 So .2d at 418.
The same result is mandated in the instant case. The ballot measure did not inform the electorate that an elected career service board existed and that an affirmative vote on the proposed amendment was intended to abolish the elected board and substitute in its place an appointive board. As the measure appeared on the ballot, voters were given no notice, fair or otherwise, of this most significant ramification, even though this was the chief, if not only, purpose of the amendment. Moreover, the misleading nature of the manner in which the measure appeared on the ballot is materially exacerbated by the erroneous reference to a nonexistent provision of the charter (see note 1 supra). Even prudent and conscientious voters could have been misled, had they looked up the reference in the city charter, by reason of the ballot’s failure to identify the correct portion of the charter being amended.
Appellees attempt to distinguish the Wadhams case on the ground that the court in that case was not required to consider the applicability of section 101.161(1) in light of a special act or charter provision which on its face superseded all other special or general laws in conflict therewith. They argue that the summary requirement in section 101.161(1) is inconsistent, and thus in conflict, with the provision in section 18.05 of the charter requiring that the entire text of a proposed amendment be set forth on the referendum ballot. Appellees point out that section 101.161(1) was last amended in 1990, and that in 1992 the legislature readopted the entire city charter of Jacksonville by chapter 92-341, Laws of Florida, which included in section 4 a provision that:
This act supersedes all laws and parts of law which may be in conflict herewith. All laws and parts of laws in conflict herewith are repealed but only to the extent of such conflict.
Thus, they argue, this section effectively repeals section 101.161(1) insofar as it could be applicable to amending the Jacksonville City Charter.
We reject this argument because there is no conflict or inconsistency between the charter’s requirement that the ballot set forth the full text of the proposed charter amendment and the requirement of section 101.161(1) that the ballot include a summary apprising the electorate of the chief purpose of the measure at issue. Setting forth the complete text of an amendment in no way is in conflict with setting forth a summary to explain the purpose and effect of the amendment text on existing law. On the contrary, as the supreme court explained in Wadhams, merely setting forth the text of an amendment without explaining its legal effect on existing provisions can very likely be misleading, as it manifestly was in the instant case. Moreover, the absence of any such conflict is evident from the City’s February 1994 charter amendment, enacted at least eight months before the general election involved in this case, by which the statutory ballot summary requirements of section 101.161(1) as well as the full text of the amendment were expressly required in section 18.05©. For this reason, we also reject appellees’ argument that the absence of such express reference to section 101.161(1) in section 18.05© prior to the February 1994 amendment indicates legislative intent that no such summary was required. Contrary to appel-lees’ argument, we read the 1994 amendment merely as clarifying any ambiguity that may have existed with respect to the charter amending process to make clear that compliance with all relevant parts of section 101.161 is required. Clair v. Glades County Board of Comm’rs, 649 So.2d 224, 227 n. 5 (Fla. *167 1995); Murthy v. N. Sinha Corp., 644 So.2d 983, 986 n. 8 (Fla.1994).
Finally, we reject appellees’ contention that the law in effect in 1992 when TRIMM began its petition campaign governs the manner in which the proposed amendment should appear on the referendum ballot and that to apply- the 1994 amendment of section 18.05(j) in this case would deny them constitutional due process. We note that the cases cited by appellees in support of this argument deal with the invalidation of petitions gathered prior to a change in the law governing the content of petitions collected and submitted in support of placing a referendum measure on the ballot. In this case, we are not required to consider whether the petitions themselves did or did not comply with the 1994 amendment to section 18.05. In this case, we are only concerned with whether the presentation of the proposed amendment on the referendum ballot complied with the statutory summary requirement, and this issue must be governed by the law in effect at the time the petitions were certified for placement on the ballot at the next election. Although appellees argue that they acted in reliance on the advice of the Supervisor of Elections in preparing the petitions and soliciting signatures of supporters thereon, appellees could not rely on that advice in determining the manner of presentation of the referendum issue on the ballot, because that determination does not relate back to the gathering of petitions. Simply stated, there was no factual or legal impediment to requiring compliance with the ballot summary requirement in the 1994 referendum.
For the reasons discussed herein, the summary final judgment for appellees is reversed and this cause is remanded with directions to enter summary judgment for appellants. In view of this disposition, we find it unnecessary to reach the other issues raised on appeal.
REVERSED AND REMANDED.
BARFIELD and ALLEN, JJ., concur.

. Appellees concede that the reference in the amendment on the ballot to section 19.02, which also appeared on the initiative petitions, is an error. There is no section 19.02 to the current charter, and the composition and method of selection of the career service board is addressed in section 17.02.

. Section 166.031, Florida Statutes (1993), provides:
(1) The governing body of a municipality may, by ordinance, or the electors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter, which amendment may be to any part or to all of said charter except that part describing the boundaries of such municipality. The governing body of the municipality shall place the proposed amendment contained in the ordinance or petition to a vote of the electors at the next general election held within the municipality or at a special election called for such purpose.