752 So.2d 1241 (2000)
Katherine HARRIS, as Secretary of State, Appellant,
v.
Carlton MOORE, and Jane Carroll, as Broward County Supervisor of Elections, Appellees.
No. 4D00-202.
District Court of Appeal of Florida, Fourth District.
March 3, 2000.
Rehearing Denied March 29, 2000.
*1242 Robert A. Butterworth, Attorney General, Tallahassee, Cecile L. Dykas and Charles M. Fahlbusch, Assistant Attorneys General, Ft. Lauderdale, for appellant.
Samuel S. Goren and Michael D. Cirullo, Jr., of Josias, Goren, Cherof, Doody & Ezrol, P.A., Ft. Lauderdale, for Appellee-Jane Carroll.
Johnny L. McCray, Jr. of Law Office of Johnny L. McCray, Jr., P.A., Pompano Beach, for Appellee-Carlton Moore.
PER CURIAM.
We reverse an order requiring that a proposed referendum ballot question be stricken from the Broward County ballot in the March 14, 2000, election.
Carlton Moore, a taxpayer/voter of Broward County, challenges the validity of the following ballot question:
COUNTY TO BE GOVERNED BY COMMISSIONERS ELECTED FROM SINGLE-MEMBER DISTRICTS AND ELECTED EXECUTIVE MAYOR
Broward County shall be governed by commissioners and elected Mayor. The legislative branch of Broward County shall consist of seven (7) county commissioners elected from single-member districts. The Mayor shall be its chief executive officer with the right of veto over legislative acts. A professional County Administrator shall be the chief operating officer of the county. Subsequent to 2002, nine (9) county commissioners shall be elected from single-member districts.
 Yes___ No___
The trial court found that the question does not "set out the chief purpose of the amendment sufficiently enough to give the electorate fair notice of the actual changes in the law." The result, according to the trial court, was that the ballot question is misleading by its failure to inform the public that the change, if approved, would amend an existing charter provision and "abolish" an existing form of government (seven commissioners elected at large appoint a county manager) in favor of another (strong mayor).
Section 101.161, Florida Statutes, as follows, governs the analysis of whether a ballot summary is sufficient:
(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word `yes' ... The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, ... or enabling resolution or ordinance. The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption....
(emphasis supplied) The purpose of this provision is to insure that the electorate receives fair and actual notice of the proposal's purpose and effect. Grose v. Firestone, 422 So.2d 303, 305 (Fla.1982).
The trial court properly recognized that while a ballot summary need not explain every detail or ramification of a proposed amendment, it must clearly explain the "chief purpose" of the measure. Askew v. Firestone, 421 So.2d 151, 155-56 (Fla.1982); Wadhams v. Board of County Commissioners of Sarasota County, 567 So.2d 414 (Fla.1990); Abramowitz v. Glasser, 656 So.2d 1332 (Fla. 4th DCA), rev. denied, 664 So.2d 248 (Fla.1995). The trial court relied on Askew and Wadhams in reaching its conclusion that the summary is invalid. However, the objection to the ballot summary here is not, as it was in Askew or Wadhams, that the ballot language failed to specify the proposed *1243 change, thereby confusing voters. Askew, 421 So.2d at 154; Wadhams, 567 So.2d at 416-17. Neither does this summary give the appearance of creating new rights or protections, when the actual effect is to reduce or eliminate rights or protections already in existence. Askew, 421 So.2d at 154.
As a general rule, courts will not interfere with the democratic process to restrain the holding of an election. Metropolitan Dade County v. Shiver, 365 So.2d 210, 212 (Fla. 3d DCA 1978). Accordingly, courts must act with "extreme care, caution and restraint" before removing an amendment from the vote of the people. Askew.
The trial court, in a reasoned opinion, was concerned with what the summary did not state. Of most concern was that the summary did not state that a favorable vote would "amend the existing County Charter and abolish the existing form of county government and substitute in its place a strong mayor form of government."
This court has recognized that language in the nature of that condemned in Askew is factually distinguishable from a ballot summary in which the general purpose of the proposal is stated, and the citizens will get what they vote for as summarized. Abramowitz. Judicial interference is warranted where ballot language gives the appearance of creating new rights or protections, when the actual effect is to reduce or eliminate rights or protections already in existence. Abramowitz. As such, it is not the failure of the ballot summary to state what was in place before the referendum that fails the notice requirement; rather, it is the fact that without further description, the summary affirmatively misrepresents the chief purpose of the amendment.
In Abramowitz, this court reviewed the city of Tamarac's charter amendment. The goal of the referendum was to prohibit council members, including the mayor, from serving more than two consecutive terms. The amendment contained an exception that would allow the mayor or exmayor to run for council and a councilman to run for mayor. The ballot summary did not mention the exception. The trial court found that the "seat-swapping" provision was not sufficiently outlined in the ballot summary.
There, we reversed, finding that the ballot summary adequately conveyed the general terms of the proposed amendment and did not mislead the voters. The majority distinguished Askew finding that the proposal before it omitted only an exception which was narrower than the general proposal, which was to implement term limits. Conversely, the general purpose of the question in Askew would partially remove an already existing ban on lobbying, while the summary indicated that the purpose was to impose limits on lobbying. Otherwise stated, voters in favor of term limits in Abramowitz would not be misled as, notwithstanding the exception, they were still voting for term limits. Similarly, here, voters in favor of a strong mayor form of government and single member commissioner districts will get what they vote for and the failure to mention that such is an important change in the present form of government is not misleading.
We have also considered Evans v. Bell, 651 So.2d 162 (Fla. 1st DCA 1995), and Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA), rev. denied, 523 So.2d 577 (1988), but deem them inapposite.
Unlike Askew, Evans, and Kobrin, the result of passing the amendment in this case does not appear to be hidden or otherwise dependent on unstated information as a condition of its clarity. As the Second District commented in Maxwell v. Lee County, 714 So.2d 1043 (Fla. 2d DCA 1998), the 75 word limit cannot possibly be used to discuss all of a proposed amendment's details.
It is apparent that Moore opposes the merits of the ballot issue. He argues that the ballot question at hand holds out the promise of greater inclusion, when, in fact, it is a concentration of sweeping powers in the hands of a single individual elected countywide. Moore continues that "[i]f approved, *1244 it would further disenfranchise those residents," and "[s]hamefully, because of the massive confusion created by the ballot question, these voters may facilitate their own disenfranchisement."
We are not unmindful of the serious implications of this argument. However, the ballot language clearly implies that a charter change will occur, the effect of which is to elect commissioners, from single member districts, whose legislative acts will be subject to a veto by an elected mayor. This summary informs the voters, directly and simply, what their act of voting in favor will do. Rather than mislead, the language asks voters whether this is the form of government they desire for the future.
We have also considered and reject the contention that the summary is invalid because of confusion associated with the election date for selecting nine, rather than the initial seven, commissioners. Any such uncertainty does not impact the "chief purpose" of the provision, and is insufficient to support invalidating the ballot summary.
We note further that the wording of the ballot summary in this instance is framed by special act of the legislature placing the issue on the ballot. Although we recognize that there is also a presumption favoring the validity of legislative acts, it is not necessary here to decide whether to employ this principle in support of upholding the validity of this ballot summary.
Therefore, we quash the order of the trial court and direct that the election and certification of election results proceed in due course.
Any motion for rehearing must be filed within five (5) days from the date of the release of this opinion.
STONE, FARMER, and STEVENSON, JJ., concur.