825 So.2d 532 (2002)
FLORIDA ASSOCIATION OF REALTORS, INC.; Maurice Veissi; Florida Institute of Certified Public Accountants and Florida Institute of Accountants, Inc.; Florida Association of Broadcasters; Florida Manufacturing and Chemical Council, Inc., and National Federation of Independent Business, Inc., Appellants,
v.
Jim SMITH, as Florida Secretary of State; State of Florida; the Florida Senate; Florida Taxwatch, Inc.; Florida Retail Federation; Eli Roberts & Sons, Inc.; Sandra Ballas; Florida Farm Bureau Federation; Southern Forestry Consultants, Inc., and Patricia Nathe, Appellees.
Florida Taxwatch, Inc.; Florida Retail Federation; Eli Roberts & Sons, Inc.; and Sandra Ballas, Appellants,
v.
Jim Smith, as Florida Secretary of State; State of Florida; the Florida Senate; Florida Association of Realtors, Inc.; Florida Farm Bureau Federation; Maurice Veissi; Florida Institute of Certified Public Accountants and Florida Institute of Accountants, Inc.; Florida Association of Broadcasters; Florida Manufacturing and Chemical Council, Inc.; National Federation of Independent Business, Inc.; Southern Forestry Consultants, Inc.; and Patricia Nathe, Appellees.
Florida Farm Bureau Federation; Southern Forestry Consultants, Inc.; and Patricia Nathe, Appellants,
v.
Jim Smith, as Florida Secretary of State; State of Florida; the Florida Senate; Florida Taxwatch Inc.; Florida Association of Realtors, Inc.; Maurice Veissi; Florida Institute of Certified Public Accountants and Florida Institute of Accountants, Inc.; Florida Association of Broadcasters; Florida Manufacturing and Chemical Council, Inc.; National Federation of Independent Business, Inc.; Florida Retail Federation; Eli Roberts & Sons, Inc.; and Sandra Ballas, Appellees.
Nos. 1D02-3387, 1D02-3402, 1D02-3403.
District Court of Appeal of Florida, First District.
September 18, 2002.
*534 Dan R. Stengle, Victoria L. Weber, and David L. Powell of Hopping, Green & Sams, Tallahassee, for Florida Association of Realtors, Inc., Maurice Veissi, Florida Institute of Certified Public Accounts and Florida Institute of Accountants, Florida Association of Broadcasters, Florida Manufacturing and Chemical Council, Inc., and National Federation of Independent Business, Inc.
Stephen H. Grimes and Susan L. Kelsey of Holland and Knight, LLP, Tallahassee, for Florida Taxwatch, Florida Retail Federation, Eli Roberts & Sons, Inc., and Sandra Ballas.
Samuel J. Ard of Ard, Shirley & Hartman, P.A., Tallahassee, and Michael L. Rosen of Bricklemeyer, Smolker & Bolves, Tallahassee, P.A., for Florida Farm Bureau Federation, Inc., Southern Forestry Consultants, Inc., and Patricia Nathe.
L. Clayton Roberts, Tallahassee, for Secretary of State Jim Smith.
Robert A. Butterworth, Attorney General, and Louis F. Hubener, Deputy Solicitor General, Tallahassee, for State of Florida.
Barry Richard of Greenberg Traurig, P.A., Tallahassee, for The Florida Senate.
Donna E. Blanton and Katherine E. Giddings of Katz, Kutter, Alderman, Bryant & Yon, P.A., Tallahassee, for Florida Trucking Association, Amicus Curiae.
Alvin B. Davis, P.A., Jorge L. Lopez, P.A., Gabriel E. Neito, Gregory Ward, and Elizabeth C. Daley of Steel Hector & Davis LLP, Miami, for International Speedway Corporation, National Association for Stock Car Auto Racing, Ladies Professional Golf Association, Miami Dolphins, Ltd., ProPlayer Stadium, Miami Heat, and Florida Panthers Hockey Club, Ltd., Amici Curiae.
ALLEN, C.J.
The appellants in these consolidated appeals challenge a trial court order by which the ballot summary relating to a proposed constitutional amendment was approved for submission to the voters at the November 5, 2002, general election. Concluding that the ballot summary does not clearly and unambiguously express the substance of the proposed amendment, as required by Article XI, section 5 of the Florida Constitution and section 101.161(1), Florida Statutes, we reverse the order under review and direct that the ballot title and summary be stricken from the general election ballot.
Article XI, section 1 of the Florida Constitution provides that the legislature may propose amendment of the Florida Constitution by joint resolution agreed to by three-fifths of the membership of each house, and, as specified in Article XI, section 5 of the Florida Constitution, the proposed amendment is then submitted to the electors. Florida law also prescribes the form in which proposed constitutional amendments are to be submitted to the electorate:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution....
§ 101.161(1), Fla. Stat.
On May 22, 2002, the legislature passed House Joint Resolution 833 proposing to *535 amend Article VII, section 3 of the Florida Constitution to add the following as subsection (f):
Legislative review of the tax on sales, use, and other transactions.There is hereby created a joint committee consisting of six senators appointed by the President of the Senate and six representatives appointed by the Speaker of the House of Representatives, which committee shall conduct a review of all exemptions from the tax on sales, use, and other transactions imposed by law and all exclusions of sales of services from such taxation. The committee shall be governed by joint rules adopted by the legislature no later than the 2003 regular session pursuant to the authority to adopt rules under section 4 of Article III. Such rules shall establish a schedule for review of such exemptions and exclusions over a three-year period and shall provide criteria to be considered by the committee in conducting its review. No later than March 1 of 2004, 2005, and 2006, the committee shall submit its findings and recommendations to the presiding officers of each house of the legislature. Any decision to deauthorize an exemption or exclusion must be approved by seven members of the committee and shall be in the form of a resolution adopted by the committee, which shall be submitted to the legislature. The resolution shall set forth the specific changes to the statutes necessary to effectuate the deauthorization, which resolution shall have the force of law and shall become effective July 1 following the second regular session occurring after submission to the legislature, except for those exemptions or exclusions expressly rescinded by joint resolution of the legislature prior to that date. This section does not operate to deauthorize any exemption or exclusion not expressly deauthorized in such resolution, nor does it prohibit subsequent reenactment by law of any exemption or exclusion that was deauthorized. The joint committee is dissolved July 1, 2006.
In accordance with the requirements of section 101.161(1), the joint resolution provides for the following title and summary to appear on the ballot:
REVIEW OF EXEMPTIONS AND EXCLUSIONS FROM THE TAX ON SALES, USE, AND OTHER TRANSACTIONS. Proposes to amend the State Constitution to create a joint legislative committee to conduct a review of exemptions from the tax on sales, use, and other transactions imposed by law and exclusions of sales of services from such taxation. Provides for submission of the committee's findings and recommendations to the presiding officers of the Legislature not later than March 1, 2004, 2005, and 2006. Requires committee decisions to deauthorize any exemption or exclusion which are approved by a majority of the committee membership to be presented to the Legislature as a resolution, not subject to gubernatorial veto. Authorizes the Legislature to rescind decisions of the committee by joint resolution. Provides that the deauthorization of exemptions or exclusions shall take effect on July 1 of the calendar year following the second regular session following adoption of the committee's resolution. Retains the Legislature's authority to adopt or reauthorize exemptions or exclusions from such tax.
In their injunctive and declaratory actions in the trial court, the appellants contended that the ballot summary should be stricken from the general election ballot because it does not satisfy the fair notice requirements of the Florida Constitution and section 101.161(1). Their arguments were based on the assertion that the ballot summary does not explain the substance of *536 the proposed amendment in clear and unambiguous terms. The trial court rejected these arguments and entered the order under review on August 20, 2002.
When the appellants thereafter appealed to this court, they filed suggestions that we certify the trial court's order to the supreme court under the pass-through provision in Article V, section 3(b)(5) of the Florida Constitution. See Fla. R.App. P. 9.125. We granted certification on August 23, 2002, because the case seemed to involve a question of great public importance requiring immediate resolution by the supreme court. The case seemed to involve great public importance because the proposed constitutional amendment would authorize significant changes to the Florida Constitution, which could result in profound alteration of Florida's system of taxation. And it seemed to be a case requiring immediate resolution because its outcome would determine whether a proposed constitutional amendment could lawfully be submitted to the voters on ballots that were required to be printed and mailed no later than September 21, 2002. See Harris v. Coalition to Reduce Class Size, 824 So.2d 245 (Fla. 1st DCA 2002); see also, Smith v. Coalition to Reduce Class Size, 827 So.2d 959 (Fla.2002). It appeared that failure to finally resolve this case before September 21, 2002, would likely result in considerable disruption to the election process.
On August 30, 2002, the supreme court entered orders by which it declined to accept jurisdiction, apparently intending for this court to have the final word in these cases. In order to meet the September 20, 2002, deadline, we ordered expedited briefing and oral argument.
The appellants present the same arguments here as they presented before the trial court, that the ballot summary does not satisfy the fair notice requirements of Florida constitutional and statutory law because it does not clearly and unambiguously advise the voter of the substance of the proposed amendment. A court may declare a ballot summary invalid only if it appears that the summary is clearly and conclusively defective. Armstrong v. Harris, 773 So.2d 7 (Fla.2000).
As the supreme court explained in Armstrong, in requiring that a ballot summary express the "substance" of a proposed constitutional amendment in "clear and unambiguous language," section 101.161(1) merely codifies the requirement of Article XI, section 5 of the Florida Constitution that a proposed constitutional amendment must be accurately represented on the ballot. The constitution and the statute require
that the voter should not be misled and that he have an opportunity to know and be on notice as to the proposition on which he is to cast his vote.... All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide.... What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.
Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982). The ballot summary involved in the present cases fails to satisfy this requirement.
Any reasonably well-informed voter in this state knows that the legislative or lawmaking power flowing directly from the people of Florida to the state government is vested in the Florida legislature, as specified in Article III, section 1 of the Florida Constitution. And any such voter also understands that the legislature exercises this power through majority vote of *537 the membership of each house, subject to gubernatorial veto, as specified in Article III, sections 7 and 8 of the Florida Constitution.
Plainly read, the constitutional amendment proposed by House Joint Resolution 833 would establish an exception to these fundamental principles of Florida constitutional law. It would provide for specified legislative power to flow directly from the people to a twelve-member committee appointed by the senate president and the speaker of the house. The committee would act through resolution adopted by a majority of its members, and it would be empowered to thereby amend the tax laws of Florida by eliminating exemptions and exclusions from various taxes imposed by state law. The effective date of committee actions would be July 1 following the second regular session occurring after submission of a committee resolution to the legislature. Although the legislature could accelerate the effective date of committee action through joint resolution, it would have no authority to override the committee's actions except by reenacting exemptions or exclusions after their elimination through committee action. The governor would likewise have no veto power over committee action.
The threshold deficiency in the ballot summary is that it does not clearly and unambiguously advise the reader that the proposed amendment would give direct lawmaking authority to the committee described in the amendment. Indeed, the most logical reading of the ballot summary and its title is that the committee would be merely a study and advisory body for the legislature, and that the legislature would make the decisions as to whether committee recommendations would be adopted. This reading of the ballot summary seems especially likely when it is remembered that any reasonably well-informed Florida voter would read the ballot summary in light of his or her correct understanding that lawmaking power in Florida is vested in the legislature.
The impression that the committee is merely a study and advisory body for the legislature arises first from the ballot title, which suggests that the committee's primary responsibility and authority would be that of providing a "REVIEW OF EXEMPTIONS AND EXCLUSIONS." The implication that the committee will simply be conducting a study and then reporting to the legislature also logically flows from summary language indicating that the committee is a legislative committee assigned the task of conducting "a review" of exemptions and exclusions and then submitting its "findings and recommendations to the presiding officers of the Legislature." After using the term "recommendations" to describe committee action and authority, the summary thereafter does reference committee "decisions," but this reference is then qualified by indications that such decisions must be "presented to the Legislature" and that the legislature may then "rescind" such decisions.
Unlike the proposed amendment itself, the summary does not indicate that the committee, rather than the legislature, would have the authority to adopt resolutions eliminating exemptions and exclusions. In fact, the only reference in the summary to "adoption" of resolutions appears in connection with an explanation as to the effective date of resolutions, and that explanation provides no clear indication as to which body would possess authority to adopt resolutions. However, use of the term "adopt" in the ensuing sentence to refer to action by the legislature would likely suggest to the reader that any "adoption" would be by the legislature.
Taken as a whole, the ballot summary and its title would not clearly tell the voter *538 that he or she is being asked to grant largely independent lawmaking authority to a committee of twelve legislators. Indeed, it would likely give voters the impression that they were merely being asked to approve the creation of a committee to conduct a study and report to the legislature on the advisability of continuing various tax exemptions and exclusions. Because this deficiency conceals what appears to be the most significant component of the proposed amendment, we conclude that the ballot summary does not satisfy the constitutional and statutory requirement that a summary must advise the voters of the substance of the proposed amendment in clear and unambiguous language.
Even if it could be read to clearly indicate that the proposed amendment would give the committee lawmaking authority to eliminate statutory exemptions and exclusions, the ballot summary would still be deficient because it incorrectly indicates that the proposed amendment would give the legislature authority to "rescind decisions of the committee by joint resolution." This language from the ballot summary reflects an unsuccessful attempt to explain the import of the phrase following the second comma in a sentence contained in the proposed amendment. The relevant sentence from the proposed amendment reads as follows:
The resolution shall set forth the specific changes to the statutes necessary to effectuate the deauthorization, which resolution shall have the force of law and shall become effective July 1 following the second regular session occurring after submission to the legislature, except for those exemptions or exclusions expressly rescinded by joint resolution of the legislature prior to that date.
As previously discussed, the referenced phrase would authorize the legislature to accelerate the elimination of exemptions or exclusions through joint resolution, but it would not give the legislature authority to rescind or override committee action. The misstatement in the ballot summary constitutes a material defect because it gives the reader incorrect information as to the actual contours of the political power proposed to be given to the committee.
The State and the Florida Senate (hereinafter referred to as "the appellees") concede that the language of the proposed amendment, taken at face value, would provide no authority for the legislature to override committee action before it becomes law. But they argue that the concluding phrase in the above-quoted sentence from the proposed amendment should nevertheless be read to give the legislature such authority. Although the referenced language would plainly authorize the legislature to adopt joint resolutions rescinding "exemptions or exclusions" before committee resolutions become law, the appellees contend that the phrase should be read so as to delete the reference to "exemptions and exclusions." They suggest that "exemptions and exclusions" should be read as "resolutions" or "committee action" or "committee decisions" or "deauthorized exemptions or exclusions," because reading the language of the proposed amendment in the way they suggest would effectuate the actual intent of the legislature. The appellees offer three arguments to support their contention that the legislature actually intended to say something very different than is indicated by the words they used.
First, they contend that the language is nonsensical surplusage because it should go without saying that a committee resolution eliminating an exemption or exclusion would not accomplish this purpose if the legislature had already eliminated the exemption *539 or exclusion as of the effective date of the committee resolution. It seems that if the proposed amendment does include any nonsensical surplusage, it is contained not in the sentence quoted above but in the next-to-last sentence of the proposed amendment. The sentence quoted above clearly does not contain a mere truism, for it would provide an entirely new and unique legislative power, the power to eliminate statutory tax exemptions and exclusions without being subjected to the prospect of gubernatorial veto. By authorizing the legislature to eliminate tax exemptions or exclusions "by joint resolution of the legislature," rather than by bill, as would otherwise be required, the amendment would insulate this legislative action from executive veto pursuant to Article III, section 8 of the Florida Constitution. We therefore reject the appellees' contention that the quoted language is mere nonsensical surplusage.
Second, the appellees draw our attention to the fact that the word "rescinded" appears in the above-quoted language and, read literally, would appear to relate to legislative authority to eliminate provisions of statutory law. The appellees make the point that the term "rescind" is not the term normally employed by the constitution to refer to legislative action eliminating all or part of an existing statutory law. As the appellees correctly indicate, "repeal" is the term used in various constitutional provisions to refer to such legislative action. Based upon these observations, the appellees argue that use of the word "rescinded" reveals that the legislature did not actually intend to refer to the elimination of existing laws but instead intended to refer to elimination of committee resolutions.
Although the proposed amendment makes numerous references to elimination of existing provisions of statutory law by lawmaking bodies, the term "repeal" does not appear in the text of the proposed amendment. In referring to the authority of the committee to remove exemptions and exclusions through elimination of existing statutory provisions, the proposed amendment uses the term "deauthorize" rather than "repeal." The appellees express their assumption that the term "deauthorize" was chosen because the committee's action in eliminating statutory exemptions and exclusions is quite different from the usual form of statutory repeal. We believe the appellees are almost certainly correct in their assumption, but this explanation as to why a term other than "repeal" was used to refer to committee elimination of statutory exemptions and exclusions is equally applicable to explain the use of a term other than "repeal" to refer to the legislature's elimination of statutory exemptions and exclusions through joint resolution. As explained above, the proposed amendment would give the legislature a new and unique procedure for changing statutory law. It would empower the legislature, for the first time, to eliminate statutory exemptions or exclusions through joint resolutions which would become law without executive review. Because the proposed constitutional amendment would authorize two completely new procedures for "repeal" of statutory provisions, we conclude that it was entirely reasonable for the legislature to use terms other than "repeal" to refer to the exercise of these unique powers. We accordingly give the term "rescinded," as used in the above-quoted portion of the proposed amendment, its usual and ordinary meaning, and we reject the appellees' argument that use of the term in this context suggests an ambiguity in the language of the proposed amendment.
*540 Third, the appellees argue that we should read the above-quoted language as meaning that the legislature may rescind committee action because the ballot summary contemporaneously adopted by the legislature indicates that the proposed amendment would give the legislature this power. But the appellees offer no authority for the proposition that a ballot summary may be used to trump the clear and unambiguous language of a proposed constitutional amendment. Because the above-quoted language from the proposed amendment is clear and unambiguous, it must be read to mean exactly what it says.
In addition to being clear and unambiguous, the above-quoted language also appears to be entirely consistent with the objective of the proposed amendment. The apparent objective is elimination of tax exemptions and exclusions without resort to the cumbersome procedures and checks and balances specified in the constitution. Authorizing the legislature to accelerate the effective date for elimination of exemptions and exclusions without concern for potential gubernatorial veto would obviously facilitate this objective. Recognizing this, we are bolstered in our belief that the language of the proposed amendment should be taken to mean exactly what it says. Because the ballot summary directly misstates this plain meaning, it would not give a prospective voter fair notice of a critical component of the proposed amendment and is therefore constitutionally defective.
Even if it could be read to clearly indicate that the proposed amendment would give the committee lawmaking authority to deauthorize statutory exemptions and exclusions, the ballot summary would also be deficient in yet another respect. Although less significant than the deficiencies discussed above, the ballot summary would also misinform the voter as to the effective date of committee resolutions deauthorizing tax exemptions and exclusions. While the proposed amendment indicates that committee resolutions "shall become effective July 1 following the second regular session occurring after submission to the legislature," the ballot summary indicates that such resolutions "shall take effect on July 1 of the calendar year following the second regular session following adoption of the committee's resolution" (emphasis supplied).
Except in the unlikely event that a regular legislative session should extend beyond June 30 of a given year, the summary language would make the effective date of committee resolutions fall one year later than the effective date specified in the proposed amendment. Although it is doubtful that this additional misstatement of the provisions of the proposed amendment should be considered sufficiently significant, standing alone, to justify removal of the summary from the ballot, it does provide additional evidence in support of our ultimate conclusion that the ballot summary does not provide fair notice of the contents of the proposed constitutional amendment.
In light of the various ballot summary deficiencies, the summary would not fairly, clearly, and unambiguously advise voters of the substance of the proposed constitutional amendment. It therefore fails to satisfy the constitutional and statutory fair notice requirements. The trial court order under review is accordingly reversed, and we order that the ballot title and summary included in House Joint Resolution 833 be stricken from the November 5, 2002, general election ballot.[*]
WOLF and PADOVANO, JJ., CONCUR.
NOTES
[*] Our decision in this case appears to us to fall within the class of decisions that would ordinarily be certified to the supreme court under Article V, section 3(b)(4) as passing upon a question of great public importance. However, the supreme court has declined to accept our earlier certification of great public importance under the pass-through provisions of Article V, section 3(b)(5). Because the question we address in these cases is no more important now than it was before, we decline to certify this decision on our own initiative. Nevertheless, if the parties wish to file a motion under Florida Rule Appellate of Procedure 9.330 requesting certification, we will consider whatever arguments they wish to make.