PARIENTE, J.,
concurring.
I concur in the decision to deny jurisdiction because there is no jurisdictional basis for this Court to review the decision of the First District Court of Appeal at this time. I write because in my view this Court should review all challenges to ballot summaries of statewide proposed constitutional amendments and I would not want our failure to do so in this case to be considered precedent. The problem at this time is one of both jurisdiction and time constraints.
As to jurisdiction, because the First Dis--trict did not certify a question of great public importance after it issued its opinion on September 18, 2002,[1] the only basis petitioners now assert for this Court to accept jurisdiction is that the decision of the First District expressly and directly conflicts with prior decisions of this Court.[2] The cases cited by the petitioners, however, are not cases that expressly and directly conflict with any prior decisions of this Court. Thus, this Court did not refuse to accept jurisdiction; there was no basis for this Court to accept jurisdiction.
Further, the procedural posture of this case points out two problems: (a) although this Court has mandatory jurisdiction over citizens’ initiatives to amend the Constitution,[3] this Court does not have mandatory jurisdiction over proposed amendments to the Constitution when the amendment is proposed by the Legislature through a Joint Resolution; and (b) the lack of any statutory deadlines for challenging legislatively enacted resolutions to amend the Florida Constitution creates artificial emergencies when objectors wait until shortly before the scheduled elections to file lawsuits challenging the proposed ballot language, such as occurred in Sancho v. Smith, 830 So.2d 856 (Fla. 1st DCA 2002), or where the Legislature adopts a Joint Resolution in the same calendar year as the election, such as occurred in this case. See Florida Ass’n of Realtors, Inc. v. Smith, 825 So.2d 532(Fla. 1st DCA 2002).
In Sancho, the Legislature adopted the Joint Resolution in the 2001 legislative session placing the proposed constitutional amendment on the ballot in 2002. However, the plaintiffs in that case waited until August 5, 2002, to file a complaint for declaratory judgment and motion for temporary injunction. The trial court acted promptly in denying the motion for temporary injunction on August 16, 2002. On the same day, the appellants filed in the First District Court of Appeal an “Emergency Certification for Pass-Through Certification” and an “Amended Emergency Suggestion for Pass-Through Certification and Emergency Motion to Expedite.” As the appellees stated in their response, to *856 “the extent that the proximity to the 2002 general election drives the emergency nature of this proceeding, it is an emergency created solely by the failure of the Appellants to timely bring their complaints before the court.” They noted that the Joint Resolution had been on file with the Secretary of State since May 30, 2001.
In sharp contrast to the posture of the Sancho case, in which there was well over a year in which to challenge the legislation proposing the amendment, House Joint Resolution 833, the subject of several other lawsuits, was only signed and filed with the Secretary of State on May 9, 2002. Within less than thirty days of that date, on June 6, 2002, a petition for writ of mandamus was filed in this Court, which was transferred to the circuit court where other related cases challenging the same amendment were pending. See Florida Farm Bureau Fed’n v. Harris, No. SC02-1189 (Fla. June 6, 2002) (unpublished order). A final summary judgment was entered by the circuit court on August 20, 2002, and notices of appeal were filed on August 21 and August 22, 2002. On August 22 and 23, 2002, when the First District Court of Appeal entered its orders certifying that the cases presented issues of great public importance, there were less than 30 days remaining until the date the statewide ballots were due to be printed. In this case, it appears that the petitioners acted promptly in seeking a remedy but the problem was with the Joint Resolution being passed in such close proximity to the time the proposed amendment was to be placed on the ballot.
In the past, we have decided questions regarding legislative ballot summaries through a variety of jurisdictional avenues, none of which appear to be wholly satisfactory. This Court will no longer hear these challenges through the filing of an original petition for mandamus in this Court. See, e.g., Florida Farm Bureau Fed’n, No. SC02-1189 (transferring a petition for writ of mandamus to the circuit court for consideration). Thus, the only practical means of seeking review by this Court is through the certification of the case by the district court of appeal under its pass-through jurisdiction[4] or through certifying a question of great public importance after a decision has been rendered. In my opinion, the proper way for this Court to decide issues involving attacks on legislatively approved proposed constitutional amendments in the future would be for the complaint for declaratory relief to be filed in circuit court, then appealed to the appellate court, which would decide the case and then could certify the question of great public importance after an opinion has been rendered.
In this case, I voted to accept jurisdiction when the First District first certified the case to be one of great public importance on August 30, 2002. See Florida Taxwatch Inc. v. Smith, 826 So.2d 991(Fla. Aug.30 2002) (unpublished order). Yet, with the deadline for printing the ballots less than three weeks away, even as of August 30, 2002, there was precious little time for this Court to review the issues presented in a deliberate manner. Thus, in this case, the burden fell on the First District Court of Appeal to decide this very important issue.
Further, the very real fact is that with the immediate deadline for the printing of ballots approaching, time was running oui> — and has now run out as the deadline for printing and mailing was September 20, 2002. See Division of Elections, Florida Department of State, 2002 Election Dates to Remember (2002). Thus, in these cases, we were faced with both a legal jurisdictional barrier to accepting jurisdiction and a practical timeliness problem.
*857 These related time problems were discussed in my specially concurring opinion in Armstrong v. Harris, 773 So.2d 7, 25-26 (Fla.2000). Accordingly, at the very least, I hope this case will bring back to the fore the problem created by there being no set process or timetable for challenges to proposed constitutional amendments. This matter should be referred jointly to the Appellate Rules Committee, Civil Rules Committee and the Rules of Judicial Administration Committee to address those procedural issues that are within their purview regarding the expediting of proceedings once those proceedings are filed in the trial court and then in the appellate court and finally this Court with the goal being for this Court to receive the case in sufficient time to make a considered decision on the merits of an issue of statewide importance such as was presented in this case.
ANSTEAD, C.J., and CANTERO, J., concur.

. See art. V, § 3(b)(4), Fla. Const

. See art. V, § 3(b)(3), Fla. Const.

. See § 15.21, Fla. Stat. (2001) ("The Secretary of State shall immediately submit an initiative petition to the Attorney General .... ”); § 16.061, Fla. Stat. (2001) ("The Attorney General shall, within 30 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, petition the Supreme Court, requesting an advisory opinion....”); art. V, § 3(b)(10), Fla. Const, ("The supreme court; .. .(10) Shall, when requested by the attorney general ... render an advisory opinion of the justices .... ”).

. See art. V, § 3(b)(5), Fla. Const.