421 So.2d 151 (1982)
Reubin ASKEW, et al., Appellants,
v.
George FIRESTONE, As Secretary of State, Appellee.
No. 62719.
Supreme Court of Florida.
October 21, 1982.
*152 Albert J. Hadeed, John K. McPherson, and Terri Wood of Southern Legal Counsel, Inc., Gainesville, for appellants.
Jim Smith, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellee.
McDONALD, Justice.
Reubin Askew, Common Cause, and the League of Women Voters of Florida, Inc., appeal a trial court order validating the caption and summary of a proposed constitutional amendment scheduled to appear on the November 1982 general election ballot. Acceding to the parties' joint suggestion, the First District Court of Appeal certified the trial court order to be of great public importance and to require immediate resolution by the Supreme Court. We have jurisdiction pursuant to article V, section 3(b)(5), Florida Constitution, and reverse the trial court order.
In the November 1976 general election the electorate of Florida approved adding section 8, the "Sunshine Amendment," to article II of the state constitution. Section *153 8 declares a public office a public trust which should be secure against abuse. To that end, the section requires full, public financial disclosure by elected officers and candidates for elected offices, provides for loss of pension or retirement benefits if a public officer or employee is convicted of a felonious breach of the public trust, and, central to this appeal, prohibits members of the legislature and statewide elected officers from lobbying their former governmental bodies or agencies for two years following vacation of office. As this Court has previously stated: "Clearly the primary purpose for which the Sunshine Amendment was adopted was to impose stricter standards on public officials so as to avoid conflicts of interest." Plante v. Smathers, 372 So.2d 933, 936-37 (Fla. 1979).
On the next to the last day of the 1982 regular session the legislature passed Senate Joint Resolution 1035, the title of which reads: "A joint resolution proposing an amendment to Section 8 of Article II of the State Constitution relating to lobbying by former legislators and statewide elected officers."[1] SJR 1035 would amend the first sentence of subsection 8(e) as follows:
(e) No member of the legislature or statewide elected officer shall personally represent another person or entity for compensation before any state the government body or agency, unless such person files full and public disclosure of his or her financial interests pursuant to subsection (a), of which the individual was an officer or member for a period of two years following vacation of office.
(Material to be added underlined, material to be deleted struck through.) The proposed amendment, therefore, would remove the absolute two-year ban on lobbying by former legislators and elected officers, retaining that ban only if an affected person failed to make financial disclosure.
Section 101.161, Florida Statutes (1981), provides for submission to popular vote of constitutional amendments and other public measures. The wording of the substance of the amendment and the ballot title must be included in the joint resolution and must be prepared by the amendment's sponsor and approved by the secretary of state. § 101.161, Fla. Stat.
The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

Id. (emphasis supplied). Section 101.161 also requires that the substance of a proposed amendment be in "clear and unambiguous language." In response to these requirements SJR 1035 includes the following proposed title and substance:
FINANCIAL DISCLOSURE REQUIRED BEFORE LOBBYING BY FORMER LEGISLATORS AND STATEWIDE ELECTED OFFICERS
Prohibits former legislators and statewide elected officers from representing other persons or entities for compensation before any state government body for a period of 2 years following vacation of office, unless they file full and public disclosure of their financial interests.
*154 The appellants sued Secretary of State Firestone, in his official capacity, seeking injunctive and declaratory relief, to prevent inclusion of the proposed title and substance on the November ballot. They alleged, among other things, that: 1) the ballot summary is required to be an explanatory statement of the chief purpose of the proposed amendment, written in clear and unambiguous language; 2) the instant summary discloses only the proposed addition of financial disclosure as a condition to after-term lobbying and fails to reveal that the proposal would repeal the existing, more stringent after-term prohibition on lobbying; and 3) the instant summary creates the impression that adopting the proposal would fill a void in conflict of interest protections instead of diluting them. The appellee answered that the language is clear and unambiguous, giving fair notice of the intent and purpose of the proposed amendment, and that the proposal will, in fact, bring former state officials into line with the true intent of the Sunshine Amendment.
After receiving the complaint and the parties' joint stipulation, Judge Willis, in an extensive and thoughtful order, found that the proposed ballot title and summary meet the requirements of section 101.161. Among others, the court made the following finding:
20. As previously noted, SJR 1035 would achieve two purposes. First, it would eliminate the limited lobbying prohibition against a former legislator from lobbying in the legislature, and a former statewide officer from lobbying in the body or agency of which he was an officer or member for a period of two years following his leaving office. Second, it would impose an absolute prohibition to those officers from lobbying in any government body or agency for the two-year period following vacation of the office, unless such persons filed the financial disclosure required of incumbents or candidates. Under the present law, a former legislator could lobby in any state agency or body except the legislature without financial disclosure during the two years following vacation of his office. If the amendment is adopted, he could lobby in the legislature or elsewhere if he files the necessary financial disclosure.
Askew v. Firestone, case no. 82-2371 (Fla.2d Cir.Ct. Oct. 6, 1982), slip op. at 8-9. The court went on to state that the

inquiry of this Court is limited to whether or not the "substance" has clearly missed the mark of furnishing the electorate of an explanatory statement in clear and unambiguous language of the chief purpose of the measure. I do not find that this is clearly and conclusively shown. It is quite true that the Sunshine Amendment sought and achieved more than financial disclosure of public officials. It deals with deterrence of corruption and conflicting interest. Subsection (e) is directed toward curbing of so-called influence peddling, by setting a limited lobbying quarantine on former officers for a two-year period following their leaving office. However, it was not general quarantine, but it permitted uninhibited lobbying in most areas without disclosure of interests which might be conflicting. The amendment is not a repeal, but a modification of those regulations, relaxing some requirements and imposing others not previously made. I do not find that the failure to state the relaxation of the absolute limited ban on lobbying has rendered the substance inadequate to explain the chief purpose of the measure.

Id. at 9-10 (emphasis supplied). After careful deliberation, we find no factual basis for the trial court's ruling and hold that he reached the wrong conclusion and that his order must be reversed.
In order for a court to interfere with the right of the people to vote on a proposed constitutional amendment the record must show that the proposal is clearly and conclusively defective. Weber v. Smathers, 338 So.2d 819 (Fla. 1976), disapproved on other grounds sub nom Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978). As previously stated, section 101.161 requires that the ballot title and summary for a proposed constitutional *155 amendment state in clear and unambiguous language the chief purpose of the measure. The requirement for proposed constitutional amendment ballots is the same as for all ballots, i.e.,
that the voter should not be misled and that he have an opportunity to know and be on notice as to the proposition on which he is to cast his vote... . All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide... . What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.

Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954) (emphasis supplied).
Simply put, the ballot must give the voter fair notice of the decision he must make. Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981). We find that the proposed title and substance do not set out the chief purpose of the amendment so as to give the electorate fair notice of the actual change in subsection 8(e) wrought by SJR 1035. While the wisdom of a proposed amendment is not a matter for our review, Weber v. Smathers, we are reminded that the "proposal of amendments to the Constitution is a highly important function of government, that should be performed with the greatest certainty, efficiency, care and deliberation." Crawford v. Gilchrist, 64 Fla. 41, 54, 59 So. 963, 968 (1912).[2] We reiterate that "lawmakers who are asked to consider constitutional changes, and the people who are asked to approve them, must be able to comprehend the sweep of each proposal from a fair notification in the proposition itself that it is neither less nor more extensive than it appears to be." Smathers v. Smith, 338 So.2d 825, 829 (Fla. 1976).
Section 8 embodies four important state concerns: The public's right to know an official's interest, the deterrence of corruption and conflicting interest, the creation of public confidence in state officials, and assistance in detecting and prosecuting officials who have violated the law. Plante v. Gonzalez, 575 F.2d 1119, 1134 (5th Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). Subsection 8(e)
was designed specifically to prevent those who have plenary budgetary and statutory control over the affairs of public agencies from potentially influencing agency decisions (or giving the appearance of having an influence) when they appear before the agencies as compensated advocates for others.
Myers v. Hawkins, 362 So.2d 926, 930 (Fla. 1978).[3] As it stands, subsection 8(e) precludes lobbying a former body or agency for two years after an affected person leaves office. The ballot summary neglects to advise the public that there is presently a complete two-year ban on lobbying before one's agency and, while it does require the filing of financial disclosure before anyone may appear before any agency for the two years after leaving office, the amendment's chief effect is to abolish the present two-year total prohibition. Although the summary indicates that the amendment is a restriction on one's lobbying activities, the *156 amendment actually gives incumbent office holders, upon filing a financial disclosure statement, a right to immediately commence lobbying before their former agencies which is presently precluded.[4] The problem, therefore, lies not with what the summary says, but, rather, with what it does not say.
Had SJR 1035 not been an amendment to an existing provision, if it had been a totally new provision, its ballot summary and title would probably have been permissible. The change to subsection 8(e) is as stated, but the stated change is only incidental to the true purpose and meaning of section 8 in its entirety. Public financial disclosure is needed to assure the accountability of state officers and is the heart of section 8. But, in subsection (e), section 8 also expresses another vital concern  the ban on lobbying. The ballot summary fails to give fair notice of an exception to a present prohibition.
If the legislature feels that the present prohibition against appearing before one's former colleagues is wrong, it is appropriate for that body to pass a joint resolution and to ask the citizens to modify that prohibition. But such a change must stand on its own merits and not be disguised as something else. The purpose of section 101.161 is to assure that the electorate is advised of the true meaning, and ramifications, of an amendment. A proposed amendment cannot fly under false colors; this one does. The burden of informing the public should not fall only on the press and opponents of the measure  the ballot title and summary must do this.
Fair notice in terms of a ballot summary must be actual notice consisting of a clear and unambiguous explanation of the measure's chief purpose. The chief purpose of SJR 1035 is to remove the two-year ban on lobbying by former legislators and elected officers. The ballot summary, however, does not adequately reflect that purpose and, therefore, does not satisfy the requirements of section 101.161. The Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people. Nevertheless, it is clear and convincing to us that the ballot language contained in SJR 1035 is so misleading to the public concerning material changes to an existing constitutional provision that this remedial action must be taken. We therefore find SJR 1035 invalid. The trial court order is reversed, and we order that the ballot caption and summary included in SJR 1035 be stricken from the November 1982 general election ballot.
It is so ordered.
NO MOTION FOR REHEARING WILL BE ALLOWED.
ALDERMAN, C.J., concurs.
BOYD, J., concurs with an opinion.
OVERTON, J., concurs with an opinion with which McDONALD and EHRLICH, JJ., concur.
EHRLICH, J., concurs with an opinion with which ALDERMAN, C.J., and McDONALD, J., concur.
ADKINS, J., dissents with an opinion.
BOYD, Justice, concurring specially.
Nothing in the government of this state or nation is more important than amending our state and federal constitutions. The law requires that before voting a citizen must be able to learn from the proposed question and explanation what the anticipated results will be.
In the proposed amendment considered here a voter would think a limitation is to be placed upon legislators for the first time to prohibit lobbying that body for two years after leaving office and permitting it if they file financial disclosure. In fact, the present Florida Constitution prohibits lobbying the Legislature for two years after leaving office. A person who may vote to adopt the amendment for the purpose of *157 limiting lobbying by legislators will actually achieve directly opposite results in removing the present lobbying ban.
When questions are presented to voters courts should not remove such issues from the ballot without compelling constitutional reasons. I do not feel there is a lawful basis to dissent and, with reluctance, I concur in the majority opinion to remove the proposed amendment from the November 1982 general election ballot.
OVERTON, Justice, concurring specially.
I concur with the majority opinion and agree that the ballot language conclusively misleads the public concerning material changes contained in the proposed constitutional amendment.
I am, however, concerned with the substantial power this Court is exercising in removing from the ballot a constitutional amendment which has been placed there by the legislature of this state on a vote of 29 to 6 in the senate and 96 to 15 in the house. Because of the defective ballot language, the public is now prohibited from voting on this amendment. Infringing on the people's right to vote on an amendment is a power this Court should use only where the record clearly and convincingly establishes that the public is being misled on material elements of the amendment. It concerns me that the public is being denied the opportunity to vote because no process has been established to correct misleading ballot language in sufficient time to change the language.
To avoid future situations in which this Court may again have to exercise this extraordinary power of striking an amendment from the ballot due to misleading ballot language, the legislature and this Court should devise a process whereby misleading language can be challenged and corrected in sufficient time to allow a vote on the proposal.
Since our constitution requires that amendments and revisions be filed with the secretary of state at least ninety days prior to the designated election date, I suggest that a process be established by the legislature to afford those who desire to challenge the ballot language to be able to do so within thirty days of the filing of the amendment or revision. This Court should then create an expedited process whereby such challenges can be settled within thirty days of the filing of the challenge. In this process a means should be provided for the correction of defective ballot language so that the election on the proposal may proceed.
This Court should do everything possible to cooperate in establishing such a process so that we may eliminate the necessity for this Court to again have to deny the people a right to vote on the merits of a constitutional proposition due to faulty ballot language. The power to remove an amendment or revision from the ballot is too great to reside solely in the few members of this Court.
McDONALD and EHRLICH, JJ., concur.
EHRLICH, Justice, concurring.
I join in the opinion of the Court with these additional comments.
Appellee in his brief says "[g]ranted, there is a tradeoff, but in giving up the total ban to lobby before their former agency for two years, the legislature has gained something valuable in return." Appellee's Brief at 12. (Emphasis supplied.) The ballot summary accurately describes one-half of the "trade-off," namely, that former office holders would be banned from lobbying or representing someone before all state bodies and agencies unless they file full disclosures of their financial interests with the Secretary of State. But by appellee's counsel's candid admission during oral argument, the ballot summary does not disclose the other half of the "trade-off," namely, giving up the total ban to lobby before the former agency for two years. The chief purpose of the amendment is the "trade-off" and the failure of the ballot summary to state the full "trade-off" is a failure to comply with the mandatory requirements of section 101.161, Florida Statutes (1981), and hence the ballot summary is fatally defective.
*158 The same deficiency in the ballot summary causes it to be misleading. In my opinion the proposed ballot summary is deceptive, because although it contains an absolutely true statement, it omits to state a material fact necessary in order to make the statement made not misleading. If the ballot summary had contained the words "and deletes from the Constitution the absolute ban against such representation during such two-year period," or words to that effect, the ballot summary would have fairly complied with section 101.161, Florida Statutes (1981), and would not have been misleading.
I do not intend to imply that the framers of the joint resolution and those members of the legislature who voted for it intentionally set out to mislead or deceive the voters. That is undoubtedly not the case. All I say is that the end result of their well-intentioned efforts was not in compliance with section 101.161, Florida Statutes (1981).
Mr. Justice Adkins ends his dissent with a rousing clarion call that the people should be allowed to vote on the proposal. I join with him in the belief that the people ought to be able to vote on amendments to their constitution. I differ with him in that I believe that the mandate of the legislature expressed in section 101.161, Florida Statutes (1981), was not complied with here for the reasons expressed above and in the Court's opinion, and hence the proposed amendment should not be on the ballot. This by no means forecloses a future legislature from submitting to the people the proposed constitutional amendment so long as the ballot title and ballot substance comply with the statutory requirements.
ALDERMAN, C.J., and McDONALD, J., concur.
ADKINS, Justice, dissenting.
The only issue in this case is whether the language of the caption and substance of the proposed amendment meets the requirements of section 101.161, Florida Statutes. This statutory provision only requires that the "chief purpose of the measure" be set forth in the ballot summary. Although there may be multiple purposes in the constitutional amendment, it would be impractical to list all the purposes; rather, it is the chief purpose that must be stated. In the original Sunshine Amendment as passed by the people, its "chief purpose" was financial disclosure. It is not only reasonable, but logical, to say that the "chief purpose" of the proposed amendment is "financial disclosure." This gives "fair notice" that the Sunshine Amendment is being changed.
We are required to uphold the action of the legislature if there is any reasonable theory on which it can be done.
The majority seems to ignore article II, section 3, Florida Constitution, which prohibits one branch of government from exercising any powers appertaining to another, unless expressly provided in the Constitution. The legislature has full power to enact measures such as section 101.161, Florida Statutes (1981), to regulate the form of the ballot; including the contents of summaries of proposals for constitutional change.
The majority opinion seems to impute fraud and deceit to the legislature. But all the legislature is required to do, under its statute, is give "fair notice" of the contents of the amendment. The summary is not challenged for failing to provide details of the proposed amendment. In Hill v. Milander, 72 So.2d 796 (Fla. 1954), we held that the whole proposal did not have to be printed on the ballot. We also said that a proposal need not be extensively explained in the voting booth. Miami Dolphins v. Metro Dade County, 394 So.2d 981, 987 (Fla. 1981).
Nor is the summary challenged because it does not debate the merits of both sides of the issue. The challenge is restricted to the theory that the ballot summary does not provide the public fair notice of the repealing effect of the proposed amendment. But did it repeal or did it amend?
Section 8(e) as it presently stands prohibits, for a period of two years following their leaving office, members of the legislature and statewide elected officers from lobbying *159 or representing anyone for compensation before government bodies of which they were a member. This was a very limited ban. While a former legislator would be banned presently from lobbying before the legislature, he would not be banned from lobbying or representing someone before any other state body or agency.
If the purpose of section 8(e) was to prevent all influence peddling, it failed from the start. The individual was and still is free to peddle his influence before any other state body.
The proposed change brings former state officials into line with the true intent of the Sunshine Amendment. Instead of being able to freely lobby in front of other state agencies immediately after their vacation of office, the former officeholders would be banned from lobbying or representing someone before any and all state bodies and agencies unless they file full dislcosure of their financial interests with the Secretary of State.
The requirement of financial disclosure by certain former elected officials is more closely attuned to the purpose of the Sunshine Amendment than is the present section 8(e).
The burden is on the appellants to show "on the record that the proposal is clearly and conclusively defective", a burden the circuit court found the appellant had failed to carry. Anyone can read the summary and clearly know what the purpose of the proposed amendment is. There are no hidden meanings or deceptive phrases.
At an election held March 11, 1980, article V, section 3 of the Florida Constitution pertaining to the jurisdiction of this Court was substantially revised. What was submitted to the people for adoption was a statement on the ballot which read "proposing an amendment to the state constitution to modify the jurisdiction of the Supreme Court". See Jenkins v. State, 385 So.2d 1356, 1364 (Fla. 1980). Just as here, the substance of the amendment repealed some of our jurisdiction. This proposed amendment was adequately explained to the public. See Jenkins v. State at 1362. If this short statement was sufficient to give fair notice of the amendment which we sponsored, I believe we should also approve the statement and summary prepared by the legislature in the instant case.
Fair notice is not strictly limited to the ballot summary. Fair notice can also be shown by the amount of information disseminated to the general public. Hill v. Milander.
It is important to note that when the Sunshine Amendment was passed the "explanation" emphasized that it provided a constitutional mandate for full and public disclosures of campaign finances and the personal finances of public officials. The public was told that "the cornerstone of the amendment is the provision requiring financial disclosure."
How can it be said that it is not fair notice to state that "financial disclosure" is the main purpose of a proposed amendment?
The legislature certainly has the ability to prepare a summary that would not mislead a person of average intelligence as to the scope of the law and put that person on notice thereby causing him to inquire into the body of the provision itself. They have done so. As a practical matter, the public generally is now more familiar with the contents and effect of this amendment than any other which will be on the ballot.
The people should be allowed to vote on the proposal.
NOTES
[1] The legislature can propose amendments to the state constitution. Art. XI, § 1, Fla. Const. Subsection 8(e) currently provides as follows:

(e) No member of the legislature or statewide elected officer shall personally represent another person or entity for compensation before the government body or agency of which the individual was an officer or member for a period of two years following vacation of office. No member of the legislature shall personally represent another person or entity for compensation during term of office before any state agency other than judicial tribunals. Similar restrictions on other public officers and employees may be established by law.
SJR 1035 would amend only the first sentence of subsection 8(e), leaving the rest of the paragraph intact.
[2] The appellants quote Justice Roberts in dissent to Weber v. Smathers, 338 So.2d at 824: "Where an amendment is by Legislative Resolution ... there are always public hearings, committee studies, and public debate in developing the format of the proposal... ." They charge that the legislature violated the virtues of legislatively proposed amendments, as described by Justice Roberts, by passing SJR 1035 on the next to the last day of the session "without prior public notice, without opportunity for public input, without reference to legislative committees for study, and with less than five minutes of deliberation and debate in each chamber." The trial court found SJR 1035 to have been properly passed, and we do not disturb that finding.
[3] We note the house debate where Representative Batchelor made an eloquent plea for not passing the joint resolution, reminding his colleagues of the public's interest in the Sunshine Amendment and warning them about the importance of appearances. Transcript of Tape of House Debate on SJR 1035, Mar. 17, 1982, at 3-4. In response Representative Richmond stated that the legislature was more concerned with righting wrongs than with appearances. Id. at 4.
[4] We note that § 11.045, Fla. Stat. (1981), sets requirements on those who would lobby the legislature itself.