PER CURIAM.
The Florida Department of State, Dawn K. Roberts in her official capacity as the Secretary of State, the Florida Senate, and the Florida House of Representatives (“Roberts and the Legislature”), appealed to the First District Court of Appeal from a July 12, 2010, judgment of the circuit court striking a legislatively proposed constitutional amendment from the November 2010 general election ballot. The First District certified to this Court that the judgment is of great public importance and that the appeal requires immediate resolution by this Court under our jurisdiction set forth in article V, section 3(b)(5), of the Florida Constitution. We agreed and granted expedited review to decide the question of great public importance— whether proposed Amendment 7, amending article III of the Florida Constitution, meets the requirements of Florida law for inclusion on the November 2010 ballot. As further explained below, we affirm the judgment of the circuit court striking proposed Amendment 7 from the ballot because the ballot language fails to inform the voter of the chief purpose and effect the amendment will have on existing, mandatory constitutional provisions in article III.
1. FACTS
On May 18, 2010, the Florida Legislature filed with the Florida Secretary of State a joint legislative resolution, Fla. H.J. Res. 7231 (2010) (HJR 7231), proposing an amendment to article III of the Florida Constitution. The amendment, designated Amendment 7 for the November 2010 general election ballot, would add section 20 to article III of the constitution as follows:
SECTION 20. Standards for establishing legislative and congressional district boundaries. — In establishing congressional and legislative district boundaries or plans, the state shall apply federal requirements and balance and implement the standards in this constitution. The state shall take into consideration the ability of racial and language minorities to participate in the political process and elect candidates of their choice, and communities of common interest other than political parties may be respected and promoted, both without subordination to any other provision of this article. Districts and plans are valid if the balancing and implementation of standards is rationally related *665 to the standards contained in this constitution and is consistent with federal law.
Section 101.161, Florida Statutes (2009), provides that whenever a constitutional amendment is proposed for submission to a vote of the people, the substance of the amendment shall be printed in clear and unambiguous language on the ballot.[1] See § 101.161(1), Fla. Stat. (2009). We have held that “[t]he purpose of section 101.161(1) is to assure that the electorate is advised of the true meaning, and ramifications, of an amendment.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). In HJR 7231, the Legislature adopted the following statement, which essentially mirrors the language contained in proposed Amendment 7, and resolved that it be placed on the ballot as follows:
BE IT FURTHER RESOLVED that the following statement be placed on the ballot:
CONSTITUTIONAL AMENDMENT
ARTICLE III, SECTION 20
STANDARDS FOR LEGISLATURE TO FOLLOW IN LEGISLATIVE AND CONGRESSIONAL REDISTRICTING. — In establishing congressional and legislative district boundaries or plans, the state shall apply federal requirements and balance and implement the standards in the State Constitution. The state shall take into consideration the ability of racial and language minorities to participate in the political process and elect candidates of their choice, and communities of common interest other than political parties may be respected and promoted, both without subordination to any other provision of article III of the State Constitution. Districts and plans are valid if the balancing and implementation of standards is rationally related to the standards contained in the State Constitution and is consistent with federal law.
On May 21, 2010, a complaint for declaratory and injunctive relief was filed in the circuit court seeking to prevent placement of proposed Amendment 7 on the November ballot. The suit was filed against the Florida Department of State and Secretary of State Dawn K. Roberts by plaintiffs Florida State Conference of NAACP Branches; Adora Obi Nweze; The League of Women Voters of Florida, Inc.; Deirdre Macnab; Robert Milligan; Nathaniel P. Reed; Democracia Ahora; and Jorge Mur-suli. After the complaint was filed, Governor Charlie Crist was allowed to intervene as amicus curiae in support of plaintiffs, and the Florida House of Representatives and the Florida Senate were allowed to intervene as defendants in the circuit court.
The complaint alleged, inter alia, that the ballot title and summary for Amendment 7 fail to inform the voters that the amendment (1) would limit the mandatory application of constitutional standards and allow the Legislature to subordinate existing standards in article III to permissive and vague standards in the amendment; (2) would allow the Legislature to consider but not implement specific protections for minority voters contained in proposed constitutional Amendments 5 and 6, also slated for the November ballot;[2] (3) would *666 allow the Legislature to “balance” standards in such a way as to create districts favoring or disfavoring incumbents; and (4) is intended to require validation of any district or plan that is related to nonman-datory standards in Amendment 7. The plaintiffs also alleged that the ballot title is misleading in that it purports to provide “standards” for redistricting while actually eliminating them.
The plaintiffs filed a motion for summary judgment seeking a judgment that the proposed amendment fails to advise voters of its chief purpose and true effect. Defendants Roberts and the Legislature filed cross motions for summary judgment. The parties agreed that there existed no disputed issues of material fact, and a final hearing was held on July 8, 2010. On July 12, 2010, the circuit court entered its order granting the plaintiffs’ motion for summary final judgment and denying the defendants’ motions for summary judgment. The circuit court’s order found that the ballot language does not meet the requirements of section 101.161(1) in that it does not fairly advise the voters of the ramifications of the amendment. As a result, the circuit court enjoined the Department of State from placing Amendment 7 on the November 2010 ballot. In so ruling, the trial judge made the following pertinent findings:
Apart from the number of districts to be drawn, the Florida Constitution currently contains only one requirement binding on the legislature when they meet every ten years to draw districts. That one mandatory requirement is that each district be contiguous. Amendment 7, if it were to pass, would make that one mandatory requirement aspirational only and would subordinate contiguity to the other aspirational goals or “standards” contained in Amendment 7.
[[Image here]]
To be clear, there is nothing unlawful or improper about what the legislative proposal seeks to do. The wisdom of a proposed amendment is not a matter of concern for this Court. But to be legally entitled to a place on the ballot, the summary and title must be fair and must advise the voter sufficiently to enable the voter to intelligently vote for or against the amendment.... Requiring that all districts be contiguous is a valuable right afforded to all citizens of Florida. A citizen cannot, and should not, be asked to give up that right without being fully informed and making an intelligent decision to do so.
Amendment 7, if passed, would allow this or any future legislature, if it chose to do so, to gerrymander districts guided by no mandatory requirements or standards and subject to no effective accountability so long as its decisions were rationally related to, and balanced with, the aspirational goals set out in Amendment 7 and the subordinate goal of contiguity.
Thus, the primary basis on which the circuit court invalidated the ballot language was that it failed to inform the voters that article III of the Florida Constitution currently contains a mandatory contiguity requirement which, if Amendment 7 is adopted, could be subordinated to the other considerations set forth in proposed Amendment 7.[3]
*667 II. ANALYSIS
The standard of review of the validity of a proposed constitutional amendment is de novo. Armstrong v. Harris, 773 So.2d 7,11 (Fla.2000). We are ever mindful that “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). “A court may declare a proposed constitutional amendment invalid only if the record shows that the proposal is clearly and conclusively defective.... ” Armstrong, 773 So.2d at 11 (citing Askew, 421 So.2d at 154).
A. Requirement that Ballot Language Inform Voters of Legal Effect and Ramifications of a Proposed Amendment
In reviewing the validity of ballot language submitted to the voters for a proposed constitutional amendment, we do not consider or review the substantive merits or the wisdom of the amendment. See Standards For Establishing Legislative District Boundaries, 2 So.3d at 184; Fla. Dep’t of State v. Slough, 992 So.2d 142, 147 (Fla.2008); In re Advisory Op. to Att’y Gen. re Med. Liab. Claimant’s Comp. Amendment, 880 So.2d 675, 677 (Fla.2004); Askew, 421 So.2d at 155. Our sole task is to determine whether the ballot language sets forth the substance of the amendment in a manner that satisfies the requirements of section 101.161, Florida Statutes (2009). Section 101.161(1) expressly requires that “[wjhenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.” § 101.161(1), Fla. Stat. “Section 101.161(1) is a codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution.” Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Government Comprehensive Land Use Plan, 902 So.2d 763, 770 (Fla.2005).
To conform to section 101.161(1), the ballot language “must state ‘the chief purpose’ of the proposed amendment. In evaluating an amendment’s chief purpose, a court must look not to subjective criteria espoused by the amendment’s sponsor but to objective criteria inherent in the amendment itself, such as the amendment’s main effect.” Armstrong, 773 So.2d at 18 (footnote omitted). In this analysis, we consider two questions: “(1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public.” Standards for Establishing Legislative District Boundaries, 2 So.3d at 184 (quoting Admsory Op. to Att’y Gen. re Prohibiting State Spending for Experimentation that Involves the Destruction of a Live Human Embryo, 959 So.2d 210, 213-14 (Fla.2007)). This evaluation also includes consideration of the amendment’s “true meaning, and ramifications.” Armstrong, 773 So.2d at 16 (quoting Askew, 421 So.2d at 156). “In practice, the accuracy requirement in article XI, section 5, functions as a kind of ‘truth in packaging’ law for the ballot.” Armstrong, 773 So.2d at 13. The proposed change in the constitution must “stand on its own merits and not be disguised as something else.” Askew, 421 So.2d at 156. “Reduced to colloquial terms, a ballot title and summary cannot ‘fly under false colors’ or ‘hide the ball’ *668 with regard to the true effect of an amendment.” Slough 992 So.2d at 147; see also Armstrong, 773 So.2d at 16.
Moreover, we have consistently adhered to the principle “that lawmakers who are asked to consider constitutional changes, and the people who are asked to approve them, must be able to comprehend the sweep of each proposal from a fair notification in the proposition itself that it is neither less nor more extensive than it appears to be.” Smathers v. Smith, 338 So.2d 825, 829 (Fla.1976). It is by these basic and longstanding principles that we must measure the ballot language presented to the voter for Amendment 7.
We do not ignore the fact that HJR 7231, proposing Amendment 7, was the product of a joint resolution passed by a three-fifths vote of the Legislature. While we traditionally accord a measure of deference to the Legislature, “[t]his deference ... is not boundless, for the constitution imposes strict minimum requirements that apply across-the-board to all constitutional amendments, including those arising in the Legislature.” Armstrong, 773 So.2d at 14. We also recognize that section 101.161(1), which places strict requirements on ballot language presented for any constitutional amendment or other public measure, is also a legislative enactment entitled to this Court’s deference.[4]
B. The Ballot Language for Proposed Amendment 7
With these principles in mind, we turn to the question before the Court— whether the ballot language proposed for Amendment 7 comports with the requirements of section 101.161, the Florida Constitution, and our case law governing placement of proposed constitutional amendments on the ballot. The ballot language for proposed Amendment 7 states in pertinent part that in redistricting, “[t]he state shall take into consideration the ability of racial and language minorities to participate in the political process and elect candidates of their choice, and communities of common interest other than political parties may be respected and promoted, both without subordination to any other provision of article III of the State Constitution.” See HJR 7231 (emphasis added).
In this case, the circuit court struck Amendment 7 from the ballot because the court concluded the ballot language did not inform the voters that the amendment would allow the existing mandatory constitutional requirement in article III, section 16(a), requiring that districts be contiguous to be subordinated to the discretionary standards contained in Amendment 7. We agree with this finding. Under the text of Amendment 7, if the discretionary considerations in Amendment 7 are not to be subordinated to any other provisions of article III, then it must follow that other provisions of article III may be subordinated to the discretionary considerations in the balancing process set forth in Amendment 7. This clearly alters the nature of the contiguity requirement current *669 ly contained in article III, section 16(a), of the constitution. Unfortunately, neither the text of the amendment nor the explanatory statement proposed by the Legislature makes this fact clear. Nowhere does the ballot language inform the voter that there is currently a mandatory contiguity requirement in article III, and nowhere does the language inform the voter that the contiguity requirement could be diluted by Amendment 7.
In Armstrong we invalidated a constitutional amendment because the ballot language failed to inform the voters that the provision would alter an existing provision in the Florida Constitution. We stated:
In the present case, as explained above, the main effect of the amendment is simple, clear-cut, and beyond dispute: The amendment will nullify the Cruel or Unusual Punishment Clause. This effect far outstrips the stated purpose (i.e., to “preserve” the death penalty), for the amendment will nullify a longstanding constitutional provision that applies to all criminal punishments, not just the death penalty. Nowhere in the summary, however, is this effect mentioned- — or even hinted at. The main effect of the amendment is not stated anywhere on the ballot. (The voter is not even told on the ballot that the word “or” in the Cruel or Unusual Punishment Clause will be changed to “and” — a significant change by itself.)
Armstrong, 773 So.2d at 18 (footnote omitted). In the present case, Amendment 7 would allow the Legislature to nullify the currently mandatory nature of the contiguity requirement, placing it on par with the other discretionary considerations in the redistricting process — considerations that are subject to discretionary balancing by the Legislature. This is a matter that should have been clearly and unambiguously stated in the ballot language. Failing this clear explanation, the voters will be unaware of the valuable right — the right to have districts composed of contiguous territory — which may be lost if the amendment is adopted. For all these reasons, we agree with the well-reasoned judgment of the circuit court and affirm the judgment striking proposed Amendment 7 from the ballot because the ballot language fails to inform the voter of the chief purpose of Amendment 7 and the effect it will have on the existing, mandatory constitutional provisions in article III.
Although the circuit court did not reach the question of whether the ballot title is invalid as being misleading, we also find that the ballot title is misleading and precludes placement of Amendment 7 on the ballot. The ballot title states “Standards for Legislature to Follow in Legislative and Congressional Redistricting.” While purporting to create and impose standards upon the Legislature in redistricting, the amendment actually eliminates actual standards and replaces them with discretionary considerations. Thus, we conclude that the title is misleading as to the true purpose and effect of the amendment.
III. CONCLUSION
Based upon the provisions of section 101.161(1), Florida Statutes, article XI, section 5, of the Florida Constitution, and our precedent, we hold that the ballot language setting forth the substance of Amendment 7 does not inform the voter of the true purpose and effect of the amendment on existing constitutional provisions and, further, is misleading. Accordingly, the judgment of the circuit court is affirmed and Amendment 7 may not be placed on the general election ballot for November 2010.
It is so ordered.
*670 PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion, in which PERRY, J., concurs.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.

. Section 101.161(1) also provides that for amendments and ballot language not proposed by joint legislative resolution, the explanatory statement included on the ballot shall not exceed 75 words in length.

. See Advisory Op. to Att’y Gen. re Standards for Establishing Legislative District Boundaries, 2 So.3d 175, 191 (Fla.2009) (approving ballot title and summary); Advisory Op. to Att’y Gen. re Standards for Establishing Legislative District Boundaries (FIS), 24 So.3d *666 1198, 1202 (Fla.2009) (holding that the financial impact statements comply with statute).

. Article III, section 16(a), of the Florida Constitution, titled “Senatorial and Representative Districts," requires that in the second year foilowing each decennial census, the Legislature shall apportion the state in accordance with the constitutions of the State and the United States "into not less than thirty nor more than forty consecutively numbered senatorial districts of either contiguous, over *667 lapping or identical territory, and into not less than eighty nor more than one hundred twenty consecutively numbered representative districts of either contiguous, overlapping or identical territory.”

. Contrary to the suggestion in the dissent that we have overlooked important precedent on constitutional construction, we are not unmindful of the rule of construction that requires a court to interpret an ambiguous constitutional provision, if possible, in such a manner as to harmonize it with existing constitutional provisions. However, as the authority cited in the dissent demonstrates, this rule of construction applies to existing constitutional provisions, not to proposed amendments. Our duty under section 101.161(1), Florida Statutes, and article XI, section 5, of the Florida Constitution is to assure that the chief purpose and effect of proposed amendments be presented to the voter in clear and unambiguous language.